**Antonyo Terrell SPIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–01–00027–CR.

Court of Appeals of Texas, Houston (1st Dist.).

May 9, 2002.

Cornel A. Williams, Houston, for Appellant.

Jessica Akins, Assistant District Attorney, Houston, for State.

Panel consists of Justices MIRABAL, HEDGES and JENNINGS.

## OPINION

TERRY JENNINGS, Justice.

Appellant, Antonyo Terrell Spight, was charged by indictment with possession with intent to manufacture or deliver cocaine weighing more than 400 grams. After the trial court denied his motion to suppress evidence, appellant pleaded guilty and, pursuant to a plea agreement with the State, was sentenced to 15 years confinement. In three points of error, appellant contends the trial court erred in denying his motion to suppress evidence because: (1) reasonable suspicion did not exist to justify his "prolonged detention," (2) there was no probable cause for his arrest, and (3) a second pat-down search of his person was illegal. We affirm.

### Background

Texas Department of Public Safety Trooper Lawrence Lily testified that, at

10:33 p.m. on April 30, 2000, while on patrol and using a radar device, he determined that appellant was driving a car at 70 miles per hour in a 55 mile per hour construction zone on Interstate 10 in Harris County. Trooper Lily turned on his overhead emergency lights and effected a traffic stop of appellant's car on the side of the freeway. The stretch of road was dark, and Lily stated there is "a lot of illegal activity on that road." Using a video camera mounted in his patrol car, Lily videotaped the entire traffic stop and subsequent search. After appellant stepped out of his car, he handed his driver's license to Lily before it was requested. Lily saw that appellant's hands were shaking "tremendously" as he handed over his license. Appellant also attempted to give his car rental agreement to Lily before it was requested. Lily stated that appellant appeared to be very nervous and "unsure of his answers" to questions.

Trooper Lily asked appellant if he had ever been arrested, and appellant told him he had previously been arrested for "gun charges" and for possession of marihuana. Because he was patrolling alone, it was dark and late in the evening, and the appellant was nervous and had been previously arrested on a weapons charge, Lily feared and suspected that appellant might be armed. Lily tried to calm appellant by informing him that Lily would only give him a warning. However, appellant continued to act nervous.

As Trooper Lily was writing out the warning, he asked appellant where he was coming from. Appellant replied that he was visiting a friend in Houston. Appellant was unsure of his answers, appeared confused, and hesitated in his response as to where his friend lived. Appellant knew only the nickname of his friend. As Lily handed appellant the completed traffic warning, appellant, without being questioned, volunteered an explanation for one of his previous arrests. Lily then told appellant that a part of his duty was to look for stolen guns and drugs. He asked appellant whether he had drugs or stolen weapons in his possession, and appellant stated he did not. Lily then asked if he could search appellant's car, and appellant said "yes, you could."

Trooper Lily testified that, after he issued the warning, he thought that the appellant was "probably a narcotic carrier." Approximately four and one-half minutes passed from the time the traffic stop began to the time that Lily asked for consent to search the car. After appellant consented to the search, Lily conducted a brief pat-down search of appellant for weapons and found a knife in appellant's pocket. Lily asked appellant to stand off the roadway, removed the keys from the ignition of the car, and opened the trunk. Appellant began moving away from the car, and Lily asked him to step closer to the car and remain in the lighted area.

After searching the trunk, Trooper Lily discovered a brick-shaped object, in a pillowcase on the backseat of the car. Although he did not intend to place appellant under arrest at this time, Lily, out of a concern for his own safety, placed handcuffs on appellant. Lily then determined that the brick-shaped object, wrapped in cellophane, was in fact a bundle of money. Lily thought that appellant might be involved with guns and drugs. Appellant told Lily that there was $7,000 wrapped in the cellophane, but it was later determined there was $11,330 wrapped in the cellophane.

Trooper Lily asked appellant what he was planning to do with the money, and appellant replied that he was going to buy a car. As he replied, appellant began moving back towards his car, and Lily told him to return to where he had been standing.

Based on appellant's behavior, Lily thought that appellant might be concealing another weapon elsewhere on his body. Lily then conducted a more thorough pat-down search of appellant, feeling a large bulge near appellant's crotch area, which, based on his experience, he thought to be a plastic bag containing powder cocaine. After obtaining and putting on latex gloves, Lily removed from appellant's pants the plastic bag, which contained more than 400 grams of powder cocaine. Approximately nine minutes passed from the time that Lily asked for consent to search the car to the time he pulled the bag of cocaine from appellant's pants.

Appellant argues the trial court erred in overruling his motion to suppress evidence because Trooper Lily's search of his car and his person was in violation of the Fourth Amendment of the United States Constitution and Article 1, Section 9, of the Texas Constitution.

### Standard of Review

 A trial court's ruling on a motion to suppress evidence will not be set aside unless there is an abuse of discretion. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996); *Taylor v. State*, 945 S.W.2d 295, 297 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). We will afford almost total deference to a trial court's determination of facts supported by the record, especially when the findings are based on the evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Here, the trial court did not make explicit findings of historical fact; we, therefore, review the evidence in the light most favorable to the

trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App. 2000). We assume the trial court made implied findings of fact supported in the record that buttress its conclusion. *Id.* Because we do not determine credibility, our de novo review of reasonable suspicion, probable cause, consent, and mixed questions of law and facts becomes a de novo review of legal questions. *State v. Derrow*, 981 S.W.2d 776, 778 (Tex.App.-Houston [1st Dist] 1998, pet. ref'd) (citing *Ornelas v. United States*, 517 U.S. 690, 697–99, 116 S.Ct. 1657, 1661–62, 134 L.Ed.2d 911 (1996)).

We note at the outset that the United States Supreme Court has long held that the "touchstone of the Fourth Amendment is *reasonableness*." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (emphasis added). Reasonableness is measured in objective terms by examining the totality of the circumstances. *Id.* We steer clear of "bright-line rules" in applying this test because of the "endless variations in the facts and circumstances" implicating the Fourth Amendment.[1] *Id.*

### Investigative Detention

 In his first issue, appellant challenges whether reasonable suspicion existed to justify his "prolonged detention." Circumstances short of probable cause may justify a temporary investigative detention. *Terry v. Ohio*, 392 U.S. 1, 15, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968);[2] *Stone v. State*, 703 S.W.2d 652, 654 (Tex. Crim.App.1986). An officer is permitted to make a temporary investigative detention of an individual if the officer has a

---

1. U.S. Const. amend IV.

2. Texas courts follow the federal *Terry* standard with respect to temporary investigative detentions, and our Court of Criminal Appeals has found no reason to employ a more strin-

gent standard under the Texas Constitution with respect to such detentions. *Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App. 1992).

reasonable suspicion that some activity out of the ordinary is or has occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the activity is related to a crime. *Stone*, 703 S.W.2d at 654. The determination of the presence of reasonable suspicion is a factual one and is made and reviewed by considering the totality of the circumstances at the of time the stop. *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim.App.1997).

Appellant does not dispute his initial detention for the offense of speeding. Rather, he argues that Trooper Lily's "continued detention after the issuance of the warning for speeding was unreasonable under the circumstances."

■■■■ A routine traffic stop is a detention and must be reasonable under both the United States and Texas constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex.Crim.App.1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 243, 245. During a traffic stop, it is reasonable for an officer to check for outstanding warrants and demand identification, a valid driver's license, and proof of insurance from the driver. *See Davis*, 947 S.W.2d at 245 n. 6. However, once the reason for the detention has been satisfied, the detention may not be used as a "fishing expedition for unrelated criminal activity." *Id.* at 243. An investigative detention "must be strictly circumscribed by the exigencies which justify its initiation." *Terry*, 392 U.S. at 25–26, 88 S.Ct. at 1882. As noted in *Terry:*

> The scope of the search must be limited because 'a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its *intolerable intensity and scope.'*

392 U.S. at 18, 88 S.Ct. at 1878 (emphasis added).

Appellant contends that his "continued detention" after issuance of the warning for speeding was unreasonable. He argues that his nervousness, as testified to by Trooper Lily, did not justify the search of his car and his person. He also argues that his "unsure answers" to Lily's questions did not support Lily's suspicion that he was a "narcotic carrier." Finally, appellant concludes that Lily's questions exceeded the scope of his detention. He argues, citing *Robinette* and *Davis*, that once Trooper Lily gave him his warning for speeding, he could no longer be legally detained. Appellant misconstrues *Robinette* and *Davis.*

In *Robinette*, the Supreme Court addressed the issue of "whether the Fourth Amendment requires that a lawfully seized defendant must be advised that he is 'free to go' before his consent to a search will be recognized as voluntary." 519 U.S. at 35, 117 S.Ct. at 419. The court held there is no such requirement. *Id.*

The pertinent facts of *Robinette* are very similar to the instant case. A sheriff's deputy determined that Robinette was driving a car at 69 miles per hour in a 45 mile per hour construction zone. The deputy effected a traffic stop of Robinette, checking his driver's license and running a computer check. The deputy asked Robinette to step out of his car, turned on his mounted video camera, returned Robinette's license, and then *issued a verbal warning* to Robinette. The deputy then asked, "One question before you get gone: [A]re you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?" After Robinette said he did not, the deputy asked if he could search his car, and Robinette

consented. Upon searching the car, the deputy found illegal narcotics. *Robinette,* 519 U.S. at 35–36, 117 S.Ct. at 419.

The Ohio Supreme Court, affirming an Ohio Court of Appeals reversal of Robinette's conviction, established a "bright-line prerequisite for *consensual* interrogation under these circumstances." *Id.* 519 U.S. at 36, 117 S.Ct. at 419 (emphasis added). It held as follows:

> The right, guaranteed by the federal and Ohio Constitutions, to be secure in one's person and property requires that citizens stopped for traffic offenses be clearly informed by the detaining officer when they are free to go *after a valid detention,* before the officer attempts to engage in a *consensual* interrogation. Any attempt at *consensual* interrogation must be preceded by the phrase 'At this time you legally are free to go' or by words of similar import.

*Id.* 519 U.S. at 36, 117 S.Ct. at 419–20 (quoting *Ohio v. Robinette,* 73 Ohio St.3d 650, 650–51, 653 N.E.2d 695, 696 (1995)) (emphasis added). In rejecting the Ohio Supreme Court's "bright-line prerequisite" and in reversing its judgment, the Supreme Court focused on the issue of voluntary consent:

> The Fourth Amendment test for a valid *consent to search* is that the consent must be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.' ... The Supreme Court of Ohio having held otherwise, its judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Robinette,* 519 U.S. at 39–40, 117 S.Ct. at 421 (citations omitted) (emphasis added).

In *Davis,* police officers effected a traffic stop of Davis for suspicion of driving while intoxicated. During the initial detention, the officers did not detect an order of alcohol on Davis and determined he was not intoxicated. They further did not detect an odor of alcohol or any type of drug coming from the car. The officers questioned Davis and his passenger and ran a computer check. Although they determined that Davis's driver's license was valid, the officers did not believe his statement that he was "on a business trip." The officers asked Davis for permission to search his car, and Davis refused to give consent. After performing a pat-down search of Davis, the officers told him he was free to leave, but his car was "being detained for an on-scene investigation." A canine unit was called to the scene and a dog made a positive alert at the trunk of Davis's car. The officers recovered a suitcase containing marihuana. *Davis,* 947 S.W.2d at 241.

The Texas Court of Criminal Appeals stated that the purpose of the investigative detention was effectuated when the officers determined that Davis was not intoxicated and, as determined by the officers when they told Davis he was free to leave, no known fact, or rational inferences from those facts, supported a conclusion that Davis was engaged in or soon would engage in criminal activity. *Id.* at 245. It noted that "even though the officers stated appellant was free to leave, he was effectively restrained." *Id.* at 246. In detaining Davis's car, "the officers were effectively depriving appellant of his liberty interest of proceeding with his itinerary." *Id.* Thus, in *Davis,* the Court determined that the court of appeals erred in holding the continued detention of the vehicle was reasonable, reversed the decision, and remanded the case to the trial court. *Id.*

The Fourteenth Court of Appeals has interpreted both *Robinette* and *Davis* to mean that "an officer may request consent to search a vehicle after a completed traffic stop but may not detain the occupants or vehicle further if such consent is re-

fused unless reasonable suspicion of some criminal activity exists." *Simpson v. State,* 29 S.W.3d 324, 328 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). We agree. We refuse to utilize a bright-line test or to hold that it is unreasonable per se for an officer to request a consent to search after the completion of a traffic stop. Rather, our focus must be on the voluntariness of the consent.

We have noted before that one of the well-established exceptions to the warrant and probable cause requirements of the Fourth Amendment is a search conducted pursuant to consent. *Derrow,* 981 S.W.2d at 778 (citing *Schneckloth v. Busta-monte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973)). Constitutional proscriptions against warrantless searches and seizures do not come into play when a person gives free and voluntary consent to a search. *Derrow,* 981 S.W.2d at 778. Voluntary consent to a warrantless search violates neither the United States or Texas Constitutions, nor the laws of Texas. *Brimage v. State,* 918 S.W.2d 466, 480 (Tex.Crim.App.1994) (citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)).

In order to be valid, consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000) (quoting *Schneckloth,* 412 U.S. at 228, 93 S.Ct. at 2048). Although the United States Constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Carmouche,* 10 S.W.3d at 331. If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we may not disturb that finding. *Id.*

Here, as shown by the videotape in the record, as Lily handed him the completed traffic warning citation, appellant, without being questioned, volunteered an explanation for one of his previous arrests. Lily then asked appellant whether he had drugs or stolen weapons in his possession, and appellant stated he did not. Lily then asked if he could search appellant's car, and appellant said "yes, you could." Approximately four and one-half minutes passed from the time the traffic stop began to the time that Lily asked for consent to search the car.

The videotape clearly shows that appellant's consent to search was freely and voluntarily made. There was no evidence whatsoever that Trooper Lily threatened or coerced appellant in any manner. The videotape shows the encounter between Lily and appellant to be brief and cordial. Appellant, himself, without questioning from Lily, volunteered information about one of his previous arrests. When Lily asked if he could search appellant's car, appellant said clearly "yes, you could." Lily did not say anything or do anything that conveyed a message that compliance with his request was required. Lily made his request after he issued the warning citation to appellant.

We hold the record does support an implied finding of clear and convincing evidence that appellant's consent to search was free and voluntary. The trial court did not abuse its discretion in denying appellant's motion to suppress evidence based on any "prolonged detention."

We overrule appellant's first issue.

### Arrest

Appellant contends, in his second issue, that Trooper Lily effected his arrest without probable cause when Lily placed handcuffs on him after finding the bundle of

money in the pillow case. He argues that, because the possession of a large amount of money is not a crime and Lily testified he "put [appellant] under arrest" after finding the money, he was in fact arrested without probable cause. Thus, he argues that any evidence seized after his "arrest" should have been suppressed.

█ In *Rhodes v. State,* the Texas Court of Criminal Appeals held that police officers may use such force as is reasonably necessary to effect the goal of a stop: investigation, maintenance of the status quo, or officer safety. 945 S.W.2d 115, 117 (Tex.Crim.App.1997). In *Rhodes,* a police officer, after a car chase, placed handcuffs on the passenger of a car after the driver of the car fled on foot. The officer was concerned for his safety, based on the circumstances: it was dark; the area was a high crime location; the officers had just concluded a car chase which was initiated due to the commission of a traffic violation and during which a bag was dropped from the car; and, his partner was chasing the driver, leaving him alone with the suspect. The court rejected Rhodes's "bright-line test" that mere handcuffing is always the equivalent of an arrest. *Id.* at 118. Rather, it noted that "common sense and ordinary human intelligence must govern over rigid criteria" in evaluating the reasonableness of an investigative detention. *Id.* It explained as follows:

> "Reasonableness" must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. Furthermore, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain and rapidly changing circumstances.

*Id.* The Court concluded that the officer made a "temporary investigative detention" of Rhodes under *Terry* that was "reasonable and justified under the cir-cumstances surrounding the detention." *Id.* Likewise, Trooper Lily's placement of handcuffs on appellant following the consensual search of appellant's car only amounted to a temporary investigative detention.

█ A police officer's testimony is one factor to consider, along with other facts and circumstances, in determining whether an arrest has taken place. *Rhodes,* 945 S.W.2d at 117. Contrary to appellant's assertion that Lily arrested appellant at that time, Lily testified that, although he did not intend to place appellant under arrest at that time, Lily, for his own safety, placed handcuffs on appellant. When asked why he handcuffed appellant when he did, Lily responded, "Well, when you have that large amount of money there you don't know if the Defendant's going to run after you, come after you or run away. That was for my safety." Lily stated he wanted to make sure appellant did not "jump" on him.

After obtaining appellant's consent to search the car, Trooper Lily conducted a pat-down search of appellant for weapons and found a knife in appellant's pocket. Lily asked appellant to stand off the roadway, removed the keys from the ignition of the car, and opened the trunk. After searching the trunk, Trooper Lily found a brick-shaped object in a pillowcase on the backseat of the car. Appellant began moving away from the car, and Lily asked him to step closer to the car and remain in the lighted area. The record reflects that, after finding the bundle of money, Trooper Lily felt a heightened concern for his personal safety.

As was the officer in *Rhodes,* Trooper Lily was alone with appellant in a dark area of a high crime location. Additionally, appellant was very nervous and had a previous arrest for gun charges. Lily had just discovered a bundle of money in ap-

pellant's car and had to repeatedly ask appellant to stay close to the car in the lighted area. Based on his training and experience, Lily suspected the bundle of money wrapped in cellophane was "drug money."

We hold that Trooper Lily's conduct in handcuffing appellant under these circumstances did not amount to an "arrest" and was reasonable as a temporary investigative detention. *See Id.* at 117–18. The facts, and rational inferences from those facts, arising during Trooper Lily's consensual search support an implied finding that appellant was engaged in or soon would engage in criminal activity. Thus, the trial court did not abuse its discretion in denying appellant's motion to suppress evidence based on appellant's theory that he was "arrested" without probable cause.

We overrule appellant's second issue.

### Second Pat–Down Search

In his third issue, appellant argues that Trooper Lily's subsequent pat-down search of appellant's person was illegal. Appellant contends that because Trooper Lily's conducted his first pat-down search and determined appellant was not carrying any weapons, any search subsequent to that was no longer a valid search under *Terry.* In support of his argument he relies on *In the Matter of A.D.D.,* 974 S.W.2d 299 (Tex.App.-San Antonio 1998, no pet.), and *Autry v. State,* 21 S.W.3d 590 (Tex.App.-Houston [1st Dist.] 2000, no pet.). However, both cases are readily distinguishable from the instant case.

In *A.D.D.,* police officers were dispatched to an address where teenagers were smoking crack cocaine. Upon arrival, the officers saw three young men, one of whom was A.D.D., sitting in front of a garage. As the officers walked up the driveway, they saw one of the men lean back and put something inside the garage wall. The officers told the young men to put their hands in plain view and frisked them for weapons. They found none. The officers then found crack cocaine in the garage wall. They arrested the young man who placed the cocaine in the wall. Then they patted down A.D.D. a second time, and found a plastic bag containing crack cocaine. The court concluded the second search of A.D.D. violated the United States and Texas constitutions. *In the Matter of A.D.D.,* 974 S.W.2d at 306–07.

However, unlike the case before us, the officers in *A.D.D.* "had full control of the situation" and had "no articulable fear of A.D.D." *Id.* at 306. The court noted that neither officer testified to any fact that could have justified a protective weapons search of A.D.D. after the first pat-down. *Id.* Here, after Trooper Lily found the bundle of money, Trooper Lily testified he felt a heightened concern for his personal safety. Appellant began moving away from the car, and Lily had to ask him to step closer to the car and remain in the lighted area.

In *Autry,* a patrolling police officer believed he saw Autry, who was sitting in the driver's seat of a car, engage in a drug transaction. The officer asked Autry for his identification, and, as Autry retrieved it from his car, the officer saw him reach under the armrest. The officer then patted down Autry for weapons, and found neither weapons nor narcotics. The officer asked Autry for consent to search his person and his car, but Autry only consented to the search of his person. The officer searched Autry, but found no contraband. The officer told appellant he was free to go, but detained appellant's car until a narcotics detection dog could be brought to the scene. About 10 minutes later, the dog smelled drugs in the car, and marihuana and cocaine were recovered from the car. *Autry,* 21 S.W.3d at 591.

A panel of this Court concluded that, "once the pat down and search of appellant's person produced neither drugs nor weapons, the limit of the investigatory detention was reached, and *further detention of appellant or his car was impermissible*." *Autry*, 21 S.W.3d at 592 (emphasis added). We held the search of Autry's car was illegal. *Id.* Here, the subsequent pat-down search of appellant was conducted after a consensual search of appellant's car revealed a bundle of money and the discovery of the money, along with appellant's behavior, led Trooper Lily to have a heightened concern for his personal safety.

We hold, under these circumstances, that Trooper Lily's subsequent pat-down search was not unreasonable under either the United States or the Texas constitutions. Thus, the trial court did not abuse its discretion in denying appellant's motion to suppress evidence based on appellant's theory that the second pat-down search was illegal.

We overrule appellant's third issue.

### Conclusion

We affirm the judgment of the trial court.