Opinion filed September 6, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed September 6, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00110-CR 

                                                    __________

 

                                 RODERICK JAMES LIDE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 685th District Court

 

                                                        Midland County, Texas

 

                                                 Trial
Court Cause No. CR30949

 



 

                                                                   O
P I N I O N

 

The jury convicted Roderick James Lide of burglary
of a building and evading arrest with a vehicle and assessed his punishment at
twelve years and six months confinement for each offense.  Lide challenges his verdict with two issues,
contending that the evidence was legally and factually insufficient. We affirm.








On July 13, 2005, Carrie Ann Farrington and Lide
checked into the Travel Inn.  Lide left
the room around 10:00 p.m and returned between midnight and 1:00 a.m.  Early the next morning, Martin Rodea learned
that someone had broken into his restaurant, Mis Amigas.  Meat, that was packaged in ziplock bags and
labeled in Spanish, was missing from the freezer, and money was missing from
the cash register.  That same morning,
Detective Manuel Beltran went to the Travel Inn to investigate an unrelated
burglary and saw a green Ford Taurus in the parking lot.  He knew that a green Ford Taurus had been
seen transporting a large television during a recent burglary.  Detective Beltran examined the Taurus=s roof and saw paint damage and deep,
fresh gouges.

Detective Beltran and his partner, Detective Rosa
Maria Rodriguez, set up surveillance to see who would leave in the Taurus.  A male and female got into the car, drove a
short distance, and stopped at a dumpster. 
The detectives parked ten feet behind the Taurus, activated their
emergency lights, and ran the car=s
tag number.  The female exited the
Taurus, and Detective Rodriguez approached her. 
When the female saw Detective Rodriguez, she quickly returned to the
Taurus.  The male, who was driving, turned
around, saw the detectives=
car, and then took off at a high rate of speed.

The detectives pursued the Taurus.  But when they observed the driver
disregarding traffic signals and not slowing down for a mother and young child
crossing the street, they abandoned the chase. 
The Taurus was later located B
abandoned B in Midland County. 
Police officers searched the car and identified Farrington as a suspect
based upon identification found in the car. 
She was located and arrested shortly thereafter.  Lide was subsequently identified and was
arrested that night.

The car was searched shortly before noon.  The police found clothing, purses, and a
large quantity of cold, packaged meat in the trunk. The meat was in ziplock
bags and was labeled AR-E-S,@ which is Spanish for beef.  Detective Beltran broadcast their findings
over the radio.  The officer
investigating the Mis Amigas burglary responded that a large amount of meat had
been recently taken from that restaurant. 
Detective Beltran contacted the Rodeas, and they identified the meat as
their own.








Lide contends initially that the evidence is
legally and factually insufficient to support the jury=s
burglary verdict.  To determine if the
evidence is legally sufficient, we must review all of the evidence in the light
most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable
doubt.   Jackson
v. State, 17 S.W.3d 664 (Tex.
Crim. App. 2000).  To determine if the
evidence is factually sufficient, we review all of the evidence in a neutral
light and determine whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson v. State, 204 S.W.3d 404,
414-15 (Tex.
Crim. App. 2006).

Lide contends that the evidence is insufficient
because there is no direct evidence, such as eyewitnesses or fingerprints,
connecting him to the Mis Amigas break-in and because the circumstantial
evidence does not establish that the meat in his trunk was taken from the
restaurant.  Martin Rodea testified that
his restaurant had been closed for two weeks for vacation but that he and his
wife went by it around 6:00 p.m. the night of July 13 and that everything
appeared normal.  The following morning
at approximately 8, he received a call from his brother.  He then went to the restaurant and saw that a
rock had been thrown through the glass in the door and the drive-through window
left open.  This evidence would allow the
jury to conclude that the break-in occurred sometime between 6:00 p.m. on July
13 and 8:00 a.m. on July 14.  The Travel
Inn was close to Mis Amigas.  Farrington
testified that Lide left their hotel room at approximately 10 p.m. and returned
between midnight and 1:00 a.m.  Martha
Laticia Rodea testified that their meat was packaged in ziplock bags, was
labeled in Spanish, and was placed in the freezer.  The meat found in Lide=s
car was cold, was in ziplock bags, and was labeled in Spanish.  Martha Rodea recognized her handwriting on
the ziplock bags.  This evidence is
legally and factually sufficient to support the jury=s
verdict, and Lide=s first
issue is overruled.

Lide next argues that the evidence is legally and
factually insufficient to support the jury=s
verdict that he evaded arrest with a vehicle because there was insufficient
evidence that he was fleeing from a person he knew was a peace officer attempting
to lawfully arrest or detain him.  Lide
argues that Detectives Beltran and Rodriguez were in an unmarked car and in
plain clothes, that there was no evidence that either displayed a badge, and
that they did not have probable cause to arrest him when they pulled up behind
Lide=s car.








The State was not required to establish probable
cause.  Tex.
Penal Code Ann. '
38.04 (Vernon 2003) makes it an offense to intentionally flee from a person
that the defendant knows is a peace officer attempting to lawfully arrest or
detain him.[1]  Police officers may temporarily detain an
individual if they have a reasonable suspicion that some activity out of the
ordinary is or has occurred, some suggestion to connect the detainee with the
unusual activity, and some indication that the activity is related to a
crime.  Spight v. State, 76 S.W.3d
761, 766 (Tex.
App.CHouston
[1st Dist.] 2002, no pet.).  Detective
Beltran knew that a green Ford Taurus had been involved in a recent burglary
and that, as part of that burglary, a large television had been transported on
the car=s roof.
When he saw a green Taurus in the Travel Inn parking lot with recent roof
damage, he had cause to believe that this was the car involved in the burglary,
and when Lide left in that car, Detective Beltran had a reasonable suspicion
that Lide might be involved in illegal activity.

The evidence also sufficiently established that
Lide knew Detectives Beltran and Rodriguez were police officers and that they
were attempting to detain him.  The
detectives were not driving a marked patrol car, but their vehicle had wigwag
headlights,[2]
a red and blue flashing light in the front windshield, and red and blue
flashing lights in the back glass. 
Detective Beltran turned these lights on when he pulled up behind Lide=s car. 
Lide turned around in his car, made eye contact with the detectives,
sped off, and told Farrington that he was in trouble during the ensuing
pursuit.  Issue two is overruled.

The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

September 6, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of: Wright, C.J., 

McCall,
J., and Strange, J.











[1]The indictment alleges that Detective Beltran was
attempting to Aarrest and detain@ Lide,
but the trial court correctly instructed the jury that an offense occurred if
Lide fled from a peace officer who was attempting to Aarrest or detain@ him.





[2]Wigwag headlights are high beam headlights that flash
intermittently.