Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00046-CR

Thomas Paul **TUCKER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kerr County, Texas
Trial Court No. CR08-11125
Honorable Spencer W. Brown, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:    Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  July 28, 2010

AFFIRMED

We withdraw our opinion and judgment of December 16, 2009, and substitute this opinion and judgment in their stead.  Appellant Thomas Paul Tucker was found guilty of the offense of possession of marihuana in an amount of less than two ounces within a drug free zone. Tucker was assessed punishment at ninety-days confinement in the Kerr County Jail, a fine of $1,000.00, and court costs of $353.00.  Tucker asserts the trial court erred in denying his motions to suppress because: (1) the collected evidence was the "fruit" of an unlawfully prolonged

detention; and (2) Tucker's consent to search was coerced, given under duress, and involuntary. We affirm the judgment of the trial court.

## BACKGROUND

On July 31, 2008, James Hicks, an investigator for the Kerr County Sheriff's Department's Narcotics Division, received information that an anonymous source reported that Tucker was dealing marihuana from his house. The following day, Hicks saw Tucker leave his home in a white van. Hicks observed Tucker failing to use his turn signal when making a right-hand turn onto a street. Hicks immediately contacted Byron Griffin, also an investigator with the Kerr County Sheriff's Department's Narcotics Division, and directed Griffin to stop Tucker for his traffic violation.

As Tucker stopped his vehicle, Officer Johnson arrived at the scene to assist Griffin. Johnson and Griffin positioned their patrol cars so Tucker would be unable to leave unless they moved their cars. Tucker exited his van pursuant to Griffin's instruction and left it running. After Tucker gave his driver's license to Griffin, Griffin patted Tucker down and found nothing. Tucker then asked the officers if he could remove his son from the van because it was hot and the van had no air conditioning, but the officers responded that the stop wouldn't take long and his son could remain in the van for the time being. Griffin wrote Tucker a warning citation for the turn signal violation and returned his driver's license. The citation was given approximately seven minutes after the initial stop. For approximately one minute, Griffin and Tucker engaged in a short conversation about the warning ticket. Griffin then asked Tucker if he had contraband in his vehicle. Tucker responded that he did not. According to Griffin, he then asked Tucker if he could search the vehicle, and Tucker consented. Tucker's consent was obtained less than ten minutes after the initial stop.

Deputy Johnson, who joined Griffin at the scene, began the search. Officer Johnson immediately noticed small pieces of marihuana on the passenger's side floorboard. Tucker was then handcuffed and informed that he was being detained for possession of marihuana. Griffin performed a second pat-down of Tucker and found nothing. Griffin informed Tucker that if he was taken to jail with "anything on him," he could be charged with a felony. Griffin asked Tucker whether he had marihuana in his shoe, and Tucker responded that marihuana was in his shoe. Griffin directed Tucker to remove his shoe which contained 10.21 grams of marihuana. The officers found nothing further on Tucker's person or in his vehicle. Tucker testified that he requested that his son be removed from the van several times, but the officers left Tucker's son inside the vehicle during the entire thirty-minute traffic stop. The traffic stop was recorded by a video camera in Griffin's car.

After locating the marihuana in Tucker's shoe, Officer Griffin informed Tucker that they had information that he was selling marihuana from inside of his residence and therefore requested permission to search his residence. Tucker responded that his two-year old child was in the van and informed Officer Griffin that he would give his consent to search the vehicle if Officer Griffin was able to take his son back to Tucker's residence. Officer Griffin testified, "that's what happened." Although Tucker testified that he only gave consent to search the residence because the officers were using his son "as a pawn," Officer Griffin specifically denied that Tucker was denied access to his child until he ultimately consented to the search of his residence.

Tucker was charged with possession of less than two ounces of marihuana in a drug-free zone. Tucker filed two motions to suppress. One sought the suppression of the evidence collected in the van and the second sought the suppression of evidence collected in the residence.

Both motions were denied.  Tucker pleaded *nolo contendere* to the charge and this appeal followed.

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.  *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We afford "almost total deference to the trial court's determination of historical facts that the record supports, especially when based on an evaluation of the witnesses' credibility and demeanor . . . ." *Dossett v. State*, 216 S.W.3d 7, 23 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We review the application of the law to the facts de novo.  *Dossett*, 216 S.W.3d at 23.  When, as here, no findings of fact were requested or filed, an appellate court reviews the evidence in the light most favorable to the trial court's ruling and assumes the trial court made implicit findings of fact supported by the record.  *See State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

**MOTION TO SUPPRESS**

From the outset, we note that Tucker does not challenge the validity of the initial traffic stop and detention.  However, Tucker asserts his detention was unlawfully prolonged and his consent was involuntarily given, leading to an illegal seizure of evidence from his vehicle.  We disagree.

**A.  Prolonged Detention**

A traffic stop is a detention and must be reasonable.  *See Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997).  To be reasonable, a traffic stop must have been justified when the person was initially stopped and not be longer than necessary to effectuate the purpose of the stop.  *Davis*, 947 S.W.2d at 245.  Once the reason for the stop has been satisfied, police officers

may not use the stop as a fishing expedition for unrelated criminal activity. *Davis*, 947 S.W.2d at 243. However, officers may request consent to search a vehicle even after the completion of the traffic stop, so long as the officer has not conveyed the message that compliance is required. *Spight v. State*, 76 S.W.3d 761, 767–68 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If consent is refused, officers may not detain the occupant or the vehicle further unless there is reasonable suspicion of some criminal activity. *Spight*, 76 S.W.3d at 768.

Tucker was justifiably stopped by police for a turn signal violation. The record supports that Tucker verbally consented to a search of his vehicle within two minutes of the issuance of the citation. Within eight minutes of the initial stop, Griffin asked Tucker if he could search the vehicle by stating, "You don't mind if I take a look, do you?" Nothing in this statement indicates that compliance with the search was required. The tone of the officer's request did not convey that such a search was mandated rather than requested. Because we conclude the detention was not unlawfully prolonged, we turn to Tucker's argument that his consent was involuntary. *See id.*

**B. Coercion and Involuntariness of Consent**

For consent to be valid, it must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973)). Consent must be given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). The ultimate question is whether the defendant's "will was overborne" by the officer's actions. *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). We examine the voluntariness of a statement based on the totality of the circumstances. *Id.* If the voluntariness of the consent is challenged at trial, the State must prove the voluntariness of a

consent to search by clear and convincing evidence. *Id.* If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we may not disturb that finding. *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006).

### C. Marihuana Seized from the Vehicle

Tucker argues that the officers' repeated refusals to remove his son from the hot van coerced him into giving consent to search the van. The record, however, does not support this assertion. Tucker gave his consent to the search of the van less than 10 minutes after the stop. The officers refused Tucker's only request to remove his son from the van, made during the first ten minutes after the stop, commenting that they didn't expect the stop to take long. Furthermore, at the suppression hearing, Tucker stated he *voluntarily* gave the officers consent to search the vehicle. (emphasis added). In light of the totality of the circumstances, Tucker's will was not "overborne" by the officers' detention or questioning. *Creager*, 952 S.W.2d at 856. Thus, we conclude there is sufficient evidence in the record to support the trial court's implicit finding that Tucker knowingly, intelligently, and voluntarily consented to the search of his van. The trial court did not err in refusing to grant the motion to suppress the evidence obtained from the stop and search of the van.

### D. Marihuana Seized from the Residence

Tucker also contends marihuana recovered from his house was the result of his consent to search his home which was coerced. Tucker again points to the evidence regarding the stop of the van, the search of the van and the delay in removing his son from the hot van as support that his consent to search the residence was coerced.

After the officers searched the van, according to Tucker, Officer Griffin stated, "[w]e know you are selling pot out of your house. So either you can take us to it, and nobody will go

to jail, and we won't call CPS, or we'll get a search warrant."  Tucker stated he agreed to the residential search because he was told he would not go to jail that day if he cooperated.  Officer Griffin denied that he used Tucker's son as a pawn or promised him anything.  The trial court was faced with the conflicting testimony of Tucker's assertion that the officers used his son "as a pawn" to obtain consent to search the residence, and Officer Griffin's adamant denial of such allegations.  Because an appellate court affords the trial court almost complete deference in its determination of historical facts, especially those based on an assessment of credibility and demeanor, we conclude there is sufficient evidence in the record to the support the trial court's implied finding that Tucker knowingly, intelligently, and voluntarily consented to the search of his residence. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

## CONCLUSION

Viewing the evidence in the light most favorable to the trial court's ruling, and assuming the trial court made any implicit findings of fact that supported the record, we conclude that the trial court did not err in denying the motion to suppress. *See Ross*, 32 S.W.3d at 855.

Rebecca Simmons, Justice

DO NOT PUBLISH