

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00186-CR

STONEY JOE CAPELL, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 26073

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

Stoney Joe Capell was the passenger in a car subject to an early morning traffic stop. Shortly after the initial stop, the vehicle's driver was arrested and placed in the patrol car. Capell waited in the vehicle while the investigating officer prepared paperwork. Approximately fifteen minutes later, Capell exited the vehicle and fled the scene. He was subsequently arrested and charged with evading arrest or detention.[1] After a bench trial, Capell was found guilty as charged and sentenced to six months in state jail. On appeal, Capell argues that he could not be convicted of evading detention because his detention was unlawful.

We find that Capell's detention was unlawful and therefore reverse the trial court's judgment and render a judgment of acquittal.

## I.      Factual Background

Shortly after 4:00 a.m. on Sunday, November 16, 2014, George Hines, a patrol officer with the Lamar County Sheriff's Department, stopped an older model Range Rover because "[t]he tag lamps on that vehicle weren't illuminating the license plate properly." The traffic stop was recorded on the patrol car's dash camera, and that audio/video recording was played for the court at trial.

Hines observed that the two men inside the car were making strange, "jerking" movements, which made Hines suspicious. The driver was later identified as Cassidy Titsworth, and Capell was the passenger. Hines was familiar with the two men from their prior dealings with the police.

---

[1] Due to a prior conviction, the offense was elevated to a state jail felony. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(A) (West Supp. 2015).

Titsworth gave Hines his name and date of birth, but he was "generally argumentative" and did not want to spell his name. Titsworth told Hines that he was driving to work, but when asked, he did not remember his boss's last name and claimed that he "[d]idn't know the name of his passenger that well, the last name." Hines found Titsworth's answers and demeanor "very suspicious." When Hines questioned Capell, however, he respectfully gave his name and date of birth.

Hines checked with his dispatcher for the existence of any warrants for Titsworth or Capell. He was informed that the car was not reported stolen, that Capell had a valid license and no outstanding warrants, that Titsworth also had no outstanding warrants, but that Titsworth's driver's license was suspended. Accordingly, Hines removed Titsworth from the car, arrested him for driving with a suspended license, handcuffed him, and put him in the back of the police car. Capell remained in the Range Rover.

Hines believed he had reasonable suspicion that "something [was] going on." He testified that he did not intend to impound the Range Rover, but instead planned to release it to Capell. Nevertheless, Hines remained in his patrol car preparing paperwork to perform an inventory search of the vehicle. Approximately twenty-five minutes after the stop began, and fifteen minutes after Hines put Titsworth in the patrol car, Capell got out of the Range Rover and walked toward the patrol car. Hines told him to get back into the car. Capell walked back toward the vehicle's passenger-side door, but instead of reentering the vehicle, he began running.

Hines testified that Capell first exited the Range Rover when a second officer, Deputy Redgie Daus, arrived. Hines found it "highly suspicious" that Capell would run away from the

3

traffic stop at 4:00 in the morning. Daus caught up to Capell shortly thereafter and arrested him for evading arrest or detention.

## II.     Issue Presented

In his brief, Capell frames the issue as whether the trial court erred in finding that his detention was lawful. Although he does not specifically allege that the evidence was insufficient to support his conviction, a lawful arrest is an element of the offense of evading arrest or detention that the State must prove beyond a reasonable doubt. Accordingly, we interpret Capell's argument as asserting that the evidence was legally insufficient to support his conviction.[2] Specifically, Capell claims that, at the time he fled, he was not lawfully detained because his prolonged detention was without sufficient cause.

## III.    Standard of Review

Evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *In re Winship*, 397 U.S. 358, 361 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard in two circumstances: (1) when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) when the evidence conclusively establishes a reasonable doubt. *Laster*, 275 S.W.3d at 518; *see Jackson*,

---

[2]Rule 38.1(f) states, "The statement of an issue or point will be treated as covering every subsidiary question that is fairly included." TEX. R. APP. P. 38.1(f). Therefore, in the interest of justice, we will analyze this issue as a challenge to the legal sufficiency of the evidence.

4

443 U.S. at 314, 318 n.11. An appellate court presumes that the fact-finder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court may not re-evaluate the weight and credibility of the record evidence and thereby substitute its own judgment for that of the fact-finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person commits the offense of evading arrest or detention "if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). A traffic stop is a detention of every individual in the vehicle and must be reasonable under the United States and Texas Constitutions. *See Brendlin v. California*, 551 U.S. 249, 255 (2007); *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *see Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).

The State bears the burden to prove the lawfulness of the attempted detention. *Guillory v. State*, 99 S.W.3d 735, 741 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd)). To be reasonable, a traffic stop must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245. "Reasonableness . . . is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Spight v. State*, 76 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2002, no pet.). An investigative stop that is reasonable at its inception may violate the Fourth

Amendment because of excessive intensity or scope. *Davis*, 947 S.W.2d at 243 (citing *Terry v. Ohio*, 392 U.S. 1, 18 (1968)).

In the course of a routine traffic stop, the detaining officer may request a driver's license, car registration, and insurance; use that information to conduct a computer check for outstanding arrest warrants; question the vehicle's occupants regarding their travel plans; and issue a citation. *Kothe v. State*, 152 S.W.3d 54, 64 n.36 (Tex. Crim. App. 2004) (citing *United States v. Zabalza*, 346 F.3d 1255, 1259 (10th Cir. 2003)); *Davis*, 947 S.W.2d at 245 n.6; *Caraway v. State*, 255 S.W.3d 302, 307–08 (Tex. App.—Eastland 2008, no pet.). If, during that investigation, an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense. *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Reasonable suspicion must be "founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010) (citations omitted).

Yet, the officer need not develop reasonable suspicion that a particular crime has been or is about to be committed; rather, the facts need only suggest "that something *illegal* was afoot." *United States v. Pack*, 612 F.3d 341, 355 (5th Cir. 2010). If such facts exist, "the police [are] entitled, as long as they act[ed] with reasonable diligence, to pursue several plausible theories in attempting to resolve the suspicion that reasonably had been created . . . ." *Id*. Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review de novo. *Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

6

When the reason for the stop has been satisfied, the stop must end and may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Robinette*, 519 U.S. at 41 (Ginsburg, J., concurring)). Once the officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted only if there is reasonable suspicion to believe that another offense has been or is being committed. *Id*. at 245. Nevertheless, "[t]here is . . . no constitutional stopwatch on traffic stops. Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'" *Haas v. State*, 172 S.W.3d 42, 51–52 (Tex. App.—Waco 2005, pet. ref'd) (quoting *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)); *see also Kothe* 152 S.W.3d at 64–65 ("The Supreme Court has expressly rejected placing a rigid time limitation on *Terry* [investigative] stops.") (citing *Sharpe*, 470 U.S. at 685–86 (declining to "'establish a *per se* rule that a 20-minute detention is too long' under *Terry*")).

## IV.    Analysis

Here, Capell does not challenge the propriety of the initial traffic stop. As a passenger, Capell was detained as a part of the investigative stop. *See Brendlin*, 551 U.S. at 255; *Whren*, 517 U.S. at 809–10. Capell argues, however, that by the time he fled, he was not lawfully detained because his continued detention was without sufficient cause.

The original purpose for the traffic stop was to investigate the defective license plate light. Hines was permitted to obtain the personal information of Titsworth and Capell and use that

7

information to check for outstanding arrest warrants and the license status of each individual. *See Caraway*, 255 S.W.3d at 307; *Davis*, 947 S.W.2d at 245 n.6. That check resulted in the arrest of Titsworth. Based on the driver's statements, Hines testified that he intended to question Capell, "then if everything checked out," perform an inventory search of the vehicle and then, "presumably," release the vehicle to Capell as per Titsworth's permission.[3] Rather than questioning Capell, however, Hines remained in his patrol car for the next fifteen minutes where he filled out paperwork in preparation to perform an inventory search of the vehicle.

Inventory procedures serve to protect an owner's property against claims of lost, stolen, or vandalized property. *Colorado v. Bertine*, 479 U.S. 367, 373 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 373–76 (1976). However, because Titsworth's vehicle was not impounded, an inventory search under these circumstances would have been an unlawful, warrantless search. *See*

---

[3]On direct examination, Hines testified:

> A.      When you arrest -- our policy is when we arrest a driver out of the vehicle we inven- -- and we're going to release to somebody else, we inventory the vehicle and have that person sign the inventory taking ownership of the vehicle. That way there's no question about what was in there and what wasn't in there.

> Q.      Okay. So what was your plan if -- if Mr. Capell had not run away, what was your plan going to be for Mr. Capell and the vehicle? I mean, what was your next step going to be after you got the paperwork finished?

> A.      Right. My next step was going to be to go up and talk to Mr. Capell a little bit, just to kind of see about this story that Mr. Titsworth has told me, you know, see if he wanted to talk about why they were out this time of morning and all this.

> Q.      So did you still have some suspicion about Mr. Capell that you wanted to clear up?

> A.      Absolutely. I was highly suspicious at this time. And then if everything checked out okay, I was going to inventory the vehicle and presumably let Mr. Capell drive off with that vehicle.

*Daniels v. State*, 600 S.W.2d 813, 814 (Tex. Crim. App. [Panel Op.] 1980); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. [Panel Op.] 1980); *Greer v. State*, 436 S.W.3d 1, 7 (Tex. App.—Waco 2014, no pet.); *Perez v. State*, 103 S.W.3d 466, 468 (Tex. App.—San Antonio 2003, no pet.). Impoundment is lawful only when no other reasonable alternative is available to ensure the protection of the vehicle or the property inside. *Smyth v. State*, 634 S.W.2d 721 (Tex. Crim. App. 1982); *see also Greer*, 436 S.W.3d 1.

In cases where impoundment follows custodial arrest, the courts have considered several factors in determining whether impoundment is reasonable, including "[w]hether . . . someone was available at the scene of the arrest to whom police could have given possession of the vehicle . . . ." *Josey v. State*, 981 S.W.2d 831, 842 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). Here, there is no dispute that Capell's driver's license was valid and that Titsworth granted permission for Capell to drive the vehicle from the scene. Therefore, Hines had reasonable alternatives to impoundment. Because Hines' only basis for continuing to detain Capell after Titsworth's arrest was to fill out paperwork associated with an inventory search and because an inventory search would have been unlawful, the continued detention of Capell was also unlawful. Therefore, the evidence is insufficient to support Capell's conviction of the offense of evading arrest or detention.

It is true that Hines was permitted to question Capell regarding his and Titsworth's destination that morning, but he failed to do so in a timely manner. *See Kothe*, 152 S.W.3d at 63 n.36. And, while there is no requirement that "an officer making a *Terry* traffic stop must investigate the situation in a particular order," *Id.* at 65, an officer must diligently pursue a means of investigation that is likely to quickly confirm or dispel his suspicions. *Id.* at 63–65; *see Haas*

9

*v. State*, 172 S.W.3d 42, 51–52 (Tex. App.—Waco 2005, pet. ref'd). Yet, even though the vehicle was not impounded and Hines had no intention of impounding it, he spent his time preparing to perform a search he lacked legal authority to conduct. *See Perez*, 103 S.W.3d at 468.

Based upon the totality of the circumstances, we find that Hines lacked specific articulable facts upon which to base the required reasonable suspicion needed to prolong Capell's detention beyond that point. Once Hines finished the license check, obtained Titsworth's permission to release the vehicle to Capell, and failed to expeditiously question Capell, Hines had completed the tasks related to the original traffic stop, and he was not permitted to continue the traffic-stop investigation. *See Kothe*, 152 S.W.3d at 63–64, 65. Therefore, at the time Capell fled the scene, he was not lawfully detained. *See* TEX. PENAL CODE ANN. § 38.04(a). Accordingly, we sustain this point of error.

## V.      Conclusion

We reverse the trial court's judgment and render a judgment of acquittal.


Ralph K. Burgess
Justice


Date Submitted:      June 3, 2016
Date Decided:        July 7, 2016

Do Not Publish

10