Affirmed and Majority and Concurring Opinions filed November 4, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00620-CR

___________________

 

Edgar Josias Vasquez, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 337th District Court

Harris County,
Texas



Trial Court Cause No. 1145289

 



 

MAJORITY OPINION

Appellant, Edgar Josias Vasquez, appeals
the trial court’s denial of his motion to suppress.  Appellant was charged by
indictment with the felony offense of possession with intent to deliver a
controlled substance, namely, cocaine.  After the trial court denied his motion
to suppress, appellant pled guilty.  The trial court found appellant guilty and
assessed punishment at thirty-five years’ confinement in the Institutional
Division of the Texas Department of Criminal Justice.  Tex. Health & Safety
Code § 481.112(f).  We affirm. 

 

Factual and Procedural Background

 

State
Trooper Charles Kibble has worked for the Texas Department of Public Safety for
fifteen years.  During this time, he attended several schools that train police
officers to “recognize signs of deception, signs of nervousness, and also
clinical and nonverbal indicators” that someone is involved in criminal
activity.  Trooper Kibble also specializes in the “detection and apprehension
of drug or narcotics carriers on major highways.”    

On
December 11, 2007, Trooper Kibble was stationary in his patrol car running his
radar on the Highway 59 freeway when he noticed appellant had what appeared to
be illegal tinting on the windows of his vehicle, a Ford F150 extended cab
truck.  After pacing appellant’s car, Trooper Kibble determined appellant was
speeding so he activated his emergency lights and gestured appellant to move
his vehicle to the right side of the road.  However, appellant hesitated to
move to the right and eventually stopped in the left emergency lane at
approximately 11:10 a.m.  During this time, Trooper Kibble ran a license and
registration check which ultimately turned out clear.  Due to his failure to
move to the right lane, Trooper Kibble stopped in front of appellant’s vehicle,
used hand gestures, and operated the P.A. system on his patrol car to get appellant
to move to the right side and off the freeway.  Based on his training and
experience, Trooper Kibble considered the initial stop unusual because drivers
typically move to the right instead of the left, which “perked [his] interest
from the get-go.” 

At
approximately 11:13 a.m., appellant stopped on the service road.  Trooper Kibble
proceeded to ask appellant questions regarding his driving record, unpaid
traffic tickets, and travel plans.  Appellant informed Trooper Kibble he lived
in the Pasadena area and was en route to Greenspoint Mall to purchase a dress
for his wife.  Trooper Kibble grew more suspicious because there were three or
four major malls located between Pasadena and the Greenspoint Mall.  Based on
his experience, Trooper Kibble knew Greenspoint Mall to be a “high-crime area”
and a “source location” for drugs and narcotics.  Furthermore, Trooper Kibble
testified appellant presented “nonverbal indicators of deception” during the
initial questioning.  Specifically, Trooper Kibble testified appellant engaged
in “a lot of facial scratching[,]” which is “one of the keys that [he] always
look[s] at.”  Trooper Kibble further testified appellant’s frequent scratching
was “a sign of nervousness” and “one of the nonverbal indicators that [he was]
trained to recognize.” 

Trooper
Kibble also testified appellant’s carotid artery was heavily pronounced and rapidly
pulsating.  When asked whether he had been trained in recognizing abnormally
distended arteries, Trooper Kibble did not answer in the affirmative.  Instead,
Kibble testified that he did recognize the difference in appellant’s arteries,
which were “sticking out of his neck” during the traffic stop, as opposed to
appellant’s non-pulsating arteries at the time of the suppression hearing.  Trooper
Kibble further testified it did not “make any sense” that appellant was not
working during the day.  He also found it odd appellant would drive to a more
distant mall when there were several malls in between his home and Greenspoint
Mall, especially when gas prices were nearly $4.00 a gallon.  Trooper Kibble’s
suspicions grew when appellant could not name the store he intended to visit to
purchase his wife’s dress.

Around
11:19 a.m., Trooper Kibble returned to his patrol car, finished writing the warning
citation, and made a comment stating: “I’m going to go a little bit deeper
here.”  By this point, Trooper Kibble had already decided “some kind of
criminal activity was more likely being perpetrated.”  At 11:21 a.m., Trooper Kibble
received a second “clear” with regard to appellant’s possible warrants. 
However, Trooper Kibble maintained his suspicions based on appellant’s prior physical
and verbal responses.  As a result, Trooper Kibble returned to appellant’s
vehicle, and again questioned appellant about his wife’s dress.  Trooper Kibble
then, without returning appellant’s license, asked appellant for his consent to
search his truck “specifically for drugs and narcotics.”  Both Trooper Kibble
and appellant testified that appellant voluntarily and freely told Trooper Kibble
that he could search appellant’s vehicle at 11:23 a.m.  Trooper Kibble did not
place handcuffs on appellant, but asked for permission to do a pat down search
of appellant for officer safety.  According to Trooper Kibble, appellant
consented to that search, which did not reveal any weapons.  Trooper Kibble
then requested that appellant sit in the patrol car while he searched
appellant’s truck, again for officer safety.  Appellant agreed.  Id.  Trooper
Kibble informed appellant that, at any time, he could activate a switch located
at the back of Trooper Kibble’s patrol car if he wanted Trooper Kibble to stop
searching his vehicle.

Once Trooper
Kibble placed appellant in the patrol car, he proceeded with the search.  Trooper
Kibble inspected the passenger areas in the front and back of the vehicle and
found no contraband.  Eventually, Trooper Kibble moved to the tailgate area of
the truck where he found a locked, hard cover painted to match the body color
of the vehicle.  When Trooper Kibble could not determine which key opened the
hard cover,[1]
he returned to appellant in the patrol car and asked him which key opened the
hard cover.  At approximately 11:30 a.m., Trooper Kibble unlocked the hard
cover and discovered a white, powdery substance, which was later identified as
cocaine.  Trooper Kibble found forty-nine individual bundles totaling
sixty-eight kilograms of cocaine.  After Trooper Kibble called for a wrecker,
he gave appellant his Miranda warnings[2]
and arrested him.

At
the suppression hearing, the video of Trooper Kibble’s traffic stop and search
of appellant’s vehicle that was recorded by the patrol car camera was admitted
into evidence.  The DVD[3]
provided an audible recording of the conversation between Trooper Kibble and
appellant.  During the hearing, appellant identified himself as the person operating
the truck in the video recording.  Appellant then testified he pulled to the
left lane instead of the right because he was closer to the left lane.  Appellant
also testified he was en route to Greenspoint Mall to purchase a dress for his
wife because he “didn’t find anything” at other malls.  When the State asked
whether appellant “voluntarily and freely told [Kibble] he could search [his]
car,” appellant replied in the affirmative.  Appellant also confirmed the fact
that Trooper Kibble informed appellant of his option to press a button to stop
the search at any time.  However, during closing arguments, appellant’s trial
counsel argued the evidence seized by Trooper Kibble should have been
suppressed because Trooper Kibble “unduly prolonged” appellant’s detention.  Appellant
argued Trooper Kibble did not have articulable facts that “would lead to
reasonable suspicion of criminal activity . . . [which] certainly do not
connect or indicate . . . criminal activity.”  Finally, appellant argued his
consent to search was “tainted” due to the illegality of the detention.

The
trial court orally made findings of fact and conclusion of law on the record as
follows:

[1.]      Trooper Charles Kibble specializes in the
apprehension of drug carriers and has specialized training with regard to narcotics
detention [sic].

[2.]      The Court further finds that the initial traffic
stop was lawful.

[3.]      The Court further finds that Trooper Kibble’s
suspicions first arose when the defendant failed to yield [the] right-of-way in
the proper manner and stopped his vehicle in the left emergency lane.

[4.]      The Court finds that the defendant’s purported
destination, the Greenspoint Mall area, is a high-crime area and a source
location for drugs and narcotics.

[5.]      The Court further finds that the defendant’s
explanation as to the purpose of his trip to Greenspoint to buy his wife a
dress was implausible and all the more so since the defendant could not name
the store or stores where he would shop for the dress.

[6.]      The Court also finds that Trooper Kibble’s
suspicion was also aroused by the fact that the defendant was not at work at
the time in question and he was traveling relatively far from his home in
Pasadena to purchase a dress in Greenspoint Mall rather than a mall closer to
his home and also in view, as the trooper noted, the price of gas being higher
at that time.

[7.]      The Court finds that Trooper Kibble also observed
nonverbal clues, which according to his training and experience, indicated
deception and nervousness, such being, lots of facial scratching and the
defendant’s carotid artery visibly pulsing.

[8.]      The Court finds that the length of the detention
to be relatively short timewise, and Officer Kibble articulated the several
factors giving rise to a reasonable suspicion on his part preceding the
detention.

[9.]      The Court finds Trooper Kibble’s questioning of
the defendant reasonable at the time and under the circumstances presented.

[10.]    The Court finds consent to search was voluntarily
given.

[11.]    In view of the totality of the circumstances, the
relatively short period of detention, and the fact that the defendant gave his
consent to search voluntarily and could have stopped same by notifying Trooper
Kibble of his withdrawal of consent by activating a control switch, the Court
concludes that the stop, detention, and search were lawful and not in violation
of the defendant’s rights under the Fourth Amendment of the U.S. Constitution
nor under Article I, Section 9 of the Texas Constitution.

The
trial court then denied appellant’s motion to suppress and appellant pled
guilty to the offense of possession with intent to deliver a controlled
substance.  The trial judge also entered supplemental findings of fact and
conclusions of law:

1.         That
on December 11, 2007, Trooper C. Kibble of the Texas Department of Public
Safety stopped the defendant for illegal window tinting and speeding.

2.         The
initial traffic stop was based on probable cause and was a legal traffic stop.

3.         That
Trooper Kibble engaged the Defendant in consensual conversation while writing
the Defendant a warning for the two aforementioned offenses.

4.         That
Trooper Kibble believed that criminal activity was afoot based on the
Defendant’s answers to questions and the defendant’s behavior.

5.         That
Trooper Kibble continued to engage the Defendant in consensual conversation
based on his reasonable suspicion of criminal activity.

6.         That
Trooper Kibble asked for and received verbal consent to search the defendant’s
vehicle.

7.         That
the search of the Defendant’s vehicle was conducted pursuant to a knowing and
voluntary consent to search the vehicle by the Defendant.

8.         That
Trooper Kibble is a credible witness, and the Court accepts as true his
testimony as to his basis for his reasonable suspicion for further detaining
the Defendant and requesting his consent to search the vehicle.

9.         That
the Trooper’s factual basis for the detention did equate to reasonable
suspicion that would permit the continued detention of the Defendant.

10.       That
because there was reasonable suspicion to continue the detention, the detention
was lawful.

11.       That
because the continued detention of the defendant was lawful, the consent given
by the defendant was valid.

  The
trial judge sentenced appellant to thirty-five years’ confinement in the
Institutional Division of the Texas Department of Criminal Justice.  This
appeal followed. 

 

Discussion

 

Asserting Trooper Kibble violated his rights under both
the Fourth Amendment to the United States Constitution and Article I, Section 9
of the Texas Constitution, appellant raises four separate issues on appeal
challenging the trial court’s denial of his motion to suppress.  U.S. Const. amend. IV; Tex. Const. art. I, § 9.[4]  Specifically, they
are: (1) the evidence is factually insufficient to support the trial court’s
denial of the motion to suppress; (2) the trial court’s findings of fact are
not supported by the record; (3) appellant’s consent to search was not voluntarily
given; and (4) the trial court abused its discretion in denying the motion to
suppress.  Because the issues of reasonable suspicion to detain appellant and voluntary
consent to search are included in the trial court’s findings of fact and
conclusions of law, we consolidate appellant’s four original issues into two:
(1) the trial court erred when it denied appellant’s motion to suppress because
the record does not support the trial court’s conclusion that Trooper Kibble
had reasonable suspicion to further detain appellant once the traffic stop had
been completed; and (2) the trial court erred when it determined that appellant
voluntarily consented to Trooper Kibble searching his vehicle.    

I.         Standard of
Review

We review a trial court’s ruling on a motion to
suppress under a bifurcated standard of review, giving almost total deference
to the trial court’s findings of historical fact and reviewing de novo the
trial court’s application of the law.  See Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997).  Questions of reasonable suspicion and probable
cause are reviewed de novo on appeal.  Garcia v. State, 296 S.W.3d 180,
184 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  The trial court is the
exclusive trier of fact and judge of the credibility of the witnesses and the
weight to be given to their testimony at the suppression hearing.  State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  As the trier of fact, the
trial court is free to believe or disbelieve all or any part of a witness’s
testimony, even if that testimony is uncontroverted.  Id.; Marsh v.
State, 140 S.W.3d 901, 905 (Tex. App.—Houston [14th Dist.] 2004, pet.
ref’d).  In reviewing a trial court’s ruling on a motion to suppress, an
appellate court must view the evidence in the light most favorable to the trial
court’s ruling.  State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App.
2006).  When, as here, the trial court makes findings of fact, we determine
whether the evidence, when viewed in the light most favorable to the trial
court’s ruling, supports these fact findings.  Id.  We then review the
trial court’s legal ruling de novo unless the fact findings that are supported
by the record are also dispositive of the legal ruling.  Id.  We must
uphold the trial court’s ruling if it is supported by the record and correct
under any theory of the law applicable to the case.  Armendariz v. State,
123 S.W.3d 401, 404 (Tex. Crim. App. 2003). 

II.        Did Trooper
Kibble have reasonable suspicion to further detain appellant?

The Fourth Amendment is not a guarantee against all
searches and seizures, but only against unreasonable searches and
seizures.  U.S. v. Sharpe, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573, 84
L.Ed.2d 605 (1985).  For Fourth Amendment purposes, a traffic stop is a seizure
and must be reasonable to be lawful.  Davis v. State, 947 S.W.2d 240,
243–45 (Tex. Crim. App. 1997).  A traffic stop is reasonable if the police
officer was justified in making the stop and his actions during the stop were
confined in length and scope to that necessary to fulfill the purpose of the
stop.  Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  In
other words, an officer may initiate a traffic stop if he has a reasonable
basis for suspecting that a person has committed a traffic violation.  See
Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).  However,
there is no requirement that an actual traffic offense be committed, just that
the officer reasonably believed that a violation was in progress.  Green v.
State, 93 S.W.3d 541, 545 (Tex. App.—Texarkana 2002, pet. ref’d).  Furthermore,
an officer does not need independent reasonable suspicion to request an
individual’s information so long as the officer does not attempt to coerce the
individual’s cooperation.  St. George v. State, 237 S.W.3d 720, 723
(Tex. Crim. App. 2007).  During a traffic stop, it is reasonable for an officer
to check for outstanding warrants and demand identification, a valid driver’s
license, and proof of insurance from the driver.  Spight v. State, 76
S.W.3d 761, 766 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  

Nevertheless, once the reason for the traffic stop
has been satisfied, the detention may not be used as a “fishing expedition for
unrelated criminal activity.”  Id.  Generally, it is lawful to detain
and question an individual while the computer check is pending.  U.S. v. Shabazz,
993 F.2d 431, 437 (5th Cir. 1993).  However, once the computer check is
completed and the officer knows the driver has a valid license with no
outstanding warrants and the car is not stolen, the traffic-stop investigation
is finished.  Kothe, 152 S.W.3d at 63–64.  It is at this time that the
detention must end and the driver must be permitted to leave.  Id. at
64.  However, once an officer concludes the investigation of the conduct that
initiated the traffic stop, continued detention of a person is permitted if the
officer has reasonable suspicion to believe another offense has been or is
being committed.  U.S. v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); Davis,
947 S.W.2d at 244. 

The determination of reasonable suspicion is made by
considering the totality of the circumstances.  Ford v. State, 158
S.W.3d 488, 492–93 (Tex. Crim. App. 2005).   Reasonable suspicion is based on
an objective standard that disregards the subjective intent of the officer and
looks entirely at whether an objective basis for the detention exists.  Garcia
v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).  An officer’s reasonable
suspicion must be supported by specific articulable facts which, taken together
with rational inferences from those facts, would warrant a person of reasonable
caution in the belief that a continued detention was justified.  Herrera v.
State, 80 S.W.3d 283, 288 (Tex. App.—Texarkana 2002, pet. ref’d).  These
facts must be more than a mere hunch or suspicion.  Davis, 947 S.W.2d at
244.  Instead, the facts used by the officer must create some reasonable
suspicion that some activity out of the ordinary is occurring or has occurred,
some suggestion to connect the detainee with the unusual activity, and some
indication the unusual activity is related to a crime.  Meeks v. State,
653 S.W.2d 6, 12 (Tex. Crim. App. 1983).

In the instant case, appellant was stopped for
speeding and the suspicion that he had illegal tinting on his windows.
Appellant does not challenge the reasonableness of the initial traffic stop. 
Appellant, however, contends Trooper Kibble lacked reasonable suspicion to
further detain appellant after receiving a “clear” computer check and without
issuing a citation.  The State argues Trooper Kibble had reasonable suspicion
to further detain appellant based on the following specific articulable facts:
(1) the initial stop was out of the ordinary when appellant pulled to the left
rather than to the right; (2) appellant’s distant travel plans to Greenspoint
Mall when there were several major malls in between his home and Greenspoint
Mall; (3) Trooper Kibble’s knowledge of the Greenspoint Mall being a
“high-crime area” and a “source location for the ultimate destination of drugs
and narcotics[;]” (4) appellant’s absence from work during the day; (5)
appellant’s desire to travel so far when gas prices were almost $4.00 a gallon;
(6) appellant’s failure to identify the store or the type of dress he was
looking for; (7) Trooper Kibble’s past training in identifying signs of someone
involved in a crime; and (8) appellant’s frequent face scratching and the
appearance of his very pronounced and pulsating carotid arteries.  We agree
with the State.

Considering the totality of the circumstances, the
record supports the trial court’s finding that Trooper Kibble had reasonable
suspicion to further detain appellant.  In this case, Trooper Kibble lawfully
stopped appellant for a traffic violation after witnessing appellant speeding. 
See Armitage v. State, 637 S.W.2d 936, 939 (Tex. Crim. App. 1982) (“It
is well settled that a traffic violation committed in an officer’s presence
authorizes an initial stop.”).  Once appellant stopped on the service road, Trooper
Kibble was authorized to ask for appellant’s information.  Mohmed v. State,
977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref’d).  Trooper Kibble asked
appellant for his identification and questioned him about his travel plans.  See
id. (holding requests for information concerning a driver’s license,
ownership of a vehicle, insurance information, driver’s travel destinations, and
purpose of a trip are all proper inquiries during a traffic stop).

In addition to appellant’s “unusual” responses to Trooper
Kibble’s questions and the nature of the traffic stop, Trooper Kibble testified
he had several years of experience in recognizing nonverbal cues of nervousness
and deception which, according to Trooper Kibble, indicate involvement in
criminal activity.  For instance, Trooper Kibble’s suspicions were first
aroused when appellant hesitated to follow Trooper Kibble’s instructions to move
to the right side of the freeway during the traffic stop.  While preparing the
citation, Trooper Kibble, already alert, questioned appellant about his travel
plans.  At this time, Trooper Kibble noticed appellant’s pronounced and
pulsating arteries and frequent head scratching, which provoked more
suspicion.  Based on his training and appellant’s curious responses, Trooper Kibble
grew more wary.   Furthermore, Trooper Kibble considered appellant’s distant
travel plans to Greenspoint Mall “out of the ordinary,” especially since gas
prices were nearly $4.00 a gallon and the mall was a well-known area for
narcotics. 

As the trier of fact, the trial court observed
firsthand the demeanor and appearance of the witnesses.  Therefore, the trial
court was entitled to accept Trooper Kibble’s testimony as true and credible
and disbelieve appellant’s testimony.  Ross, 32 S.W.3d at 855 (the trial
court may believe or disbelieve all or any part of a witness’s testimony).  Thus,
considering the totality of the circumstances and viewing the evidence in the
light most favorable to the trial court’s ruling, we conclude the trial court
did not err when it concluded Trooper Kibble had reasonable suspicion to
further detain appellant once the traffic stop was completed.  See Valencia
v. State, 820 S.W.2d 397, 400 (Tex. Crim.—Houston [14th Dist.] 1991, pet.
ref’d) (determining officer may conduct brief investigative detention of the
occupants of the vehicle, based upon his observations of suspicious activity by
the occupants of the vehicle before and after the stop, combined with his knowledge
of the area and the frequency of crime in the area, and the reasonable
inferences to be drawn).

III.      Did appellant
voluntarily consent to Trooper Kibble searching his vehicle?

In his second issue, appellant contends the trial
court should have granted his motion to suppress because his consent to search
resulted from an illegal detention.  Because we hold Trooper Kibble had
reasonable suspicion to further detain appellant, the State must satisfy its
burden to prove by clear and convincing evidence that appellant voluntarily
consented to the search so as to validate his consent, and thereby, make the
discovered evidence admissible.  After all, although Trooper Kibble had
reasonable suspicion to further detain appellant, Trooper Kibble still needed
probable cause to search appellant’s vehicle.  See Florida v. Royer, 460
US. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983).  In the absence of
probable cause, the validity of a search rests on appellant’s purported
consent.  Id.

Although a search conducted without a warrant issued
upon probable cause is “per se unreasonable,” a search conducted with voluntary
consent is an exception. Rayford v. State, 125 S.W.3d 521, 528 (Tex.
Crim. App. 2003) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 93
S.Ct. 2041, 36 L.Ed.2d 854 (1973)); Reasor v. State, 12 S.W.3d 813, 817
(Tex. Crim. App. 2000).  During a traffic stop, the officer may request the
driver’s consent to search his vehicle.  Hunter v. State, 955 S.W.2d
102, 104 (Tex. Crim. App. 1997).  Texas law requires the State to prove
voluntariness of consent to search by clear and convincing evidence, rather
than by mere preponderance of evidence.  Carmouche v. State, 10 S.W.3d 323,
331 (Tex. Crim. App. 2000); State v. Ibarra, 953 S.W.2d 242, 245 (Tex.
Crim. App. 1997).  “To be valid, consent to search must be free and
voluntary.”  U.S. v. Kelley, 981 F.2d 1464, 1470 (5th Cir. 1993) (quoting
United States v. Olivier-Becerril, 861 F.2d 424, 425 (5th Cir. 1988)). 
In order to be voluntary, the consent to search must “not be coerced, by
explicit or implicit means, by implied threat or covert force.”  Carmouche,
10 S.W.3d at 331.  Consent must be shown to be positive and unequivocal.  Id. 
Thus, consent obtained through duress or coercion, whether actual or implied,
is deemed involuntary.  Allridge v. State, 850 S.W.2d 471, 493 (Tex.
Crim. App. 1991). 

To determine whether a person’s will was “overborne,”
trial courts “must assess the totality of all the surrounding
circumstances—both the characteristics of the accused and the details of the
interrogation.”  Schneckloth, 412 U.S. 226.  Some relevant factors
include: (1) the youth of the accused; (2) the education of the accused; (3)
the intelligence of the accused; (4) the constitutional advice given to the
accused; (5) the length of the detention; (6) the repetitiveness of the
questioning; and (7) the use of physical punishment.  Reasor, 12 S.W.3d
at 818 (citing Schneckloth, 412 U.S. at 226). An officer’s failure to
inform the accused that consent can be refused may also be considered. Johnson
v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002).  However, the absence
of such information does not automatically render the accused’s consent
involuntary.  Id.  Furthermore, consent is not rendered involuntary
merely because the accused is under arrest.  Id.  Thus, if the record
supports a finding of clear and convincing evidence that the consent to search
was freely and voluntarily given, an appellate court will not disturb that
finding.  Carmouche, 10 S.W.3d at 331.

Appellant alleges Trooper Kibble wrongfully prolonged
his detention.  As a result, appellant claims his consent thereafter is
inherently “tainted” by the illegality of that “unreasonable” detention.  Appellant
also argues his consent was the direct result of Trooper Kibble’s “covert
coercion and not the independent free act of [appellant’s] will.”  Furthermore,
appellant asserts Trooper Kibble, after having received the “clear” computer
check, did not “write the warning ticket, did not return all of [appellant’s]
documents to him, and repeated questions previously asked of appellant
prolonging his detention.”

In response, the State argues appellant’s consent was
voluntary based on his actions and his testimony. The State relies on appellant’s
testimony where he stated “he voluntarily gave Officer Kibble permission to
search the vehicle.”  Furthermore, appellant testified Trooper Kibble informed
appellant that “he could hit the switch in the patrol car if he wanted to stop
the search, and that he did not do so because he voluntarily consented to the
search of his car.”  Moreover, the State asserts appellant was never arrested
nor placed in handcuffs until the cocaine was discovered.

In some cases, one can infer coercion from an
officer’s retention of an individual’s driver’s license. Jones, 234 F.3d
at 243.  This may be a factor in determining whether one voluntarily
consented.  Id.  In such circumstances, when a police officer retains an
individual’s necessary travel documents such as a driver’s license or an alien
registration card, the individual’s consent thereafter may be considered to not
be “an independent act of free will.”  U.S. v. Dortch, 199 F.3d 193, 202
(5th Cir. 1999) (holding any reasonable person would believe that he was unable
to leave without such items).  Needless to say, like any typical individual,
appellant may have felt some pressure to oblige or “consent” to any requests
made by a police officer, in this case Trooper Kibble, especially when that
officer retained his driver’s license.  Furthermore, although Trooper Kibble repeated
the same questions to appellant concerning his travel plans, this factor is not
conclusive.  While neither Trooper Kibble’s retention of appellant’s documents nor
his repetitive questions is dispositive, both are factors that may be
considered in determining the voluntariness of his consent.  We conclude these
factors weigh against voluntariness. 

However, taking into account other relevant factors
set forth in Reasor, the record supports the trial court’s finding that
appellant’s consent to search was freely and voluntarily given.  The record reveals
that appellant, at the time of the suppression hearing, was 35 years of age. 
The record does not provide proof of appellant’s education or intelligence, however,
one may reasonably infer appellant is a normal, average adult individual.  Appellant
testified he spoke English and was capable of understanding and communicating
with Trooper Kibble on the day of his detention.  The record also reveals
appellant has been married to his wife for nine years and has three children.  
Furthermore, both appellant and Trooper Kibble testified appellant agreed he
“voluntarily and freely told [Kibble] that he could search [his] car.”  They
also agreed Trooper Kibble informed appellant of the option to stop the search
by hitting a button in the patrol car, which appellant chose not to exercise.  See
Johnson, 68 S.W.3d at 653 (determining an officer’s failure to inform the
accused that consent can be refused may also be considered).  Aside from Trooper
Kibble’s retention of appellant’s license, the record does not indicate any
physical or psychological coercion or punishment.  See Erdman v.
State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (holding an individual’s
consent must not be the result of physical or psychological pressures from law
enforcement).  Instead, the record shows Trooper Kibble requested to search
appellant’s car “specifically for drugs and narcotics,” which appellant
testified he voluntarily agreed to. 

Moreover, the length of the detention was
reasonable.  Trooper Kibble initially stopped and detained appellant on the
left side of the freeway at approximately 11:10 a.m.   Appellant then admitted
to giving consent to search his vehicle at approximately 11:23 a.m.  Trooper Kibble
took seven minutes to search the vehicle until he discovered the cocaine around
11:30 a.m.  The total length of the detention lasted approximately twenty
minutes before the cocaine was discovered in appellant’s truck.  Appellant does
not dispute the reasonableness of the amount of time for the detention and even
agreed that “it was a short period of time.”  Although there are no bright-line
time limits for traffic stops, Texas courts have found longer detention periods
reasonable.  See Balentine v. State, 71 S.W.3d 763, 771 (Tex. Crim. App.
2002) (holding investigative detention of thirty to sixty minutes reasonable
because questioning lasted no longer than necessary and officer employed no
dilatory tactics); Josey v. State, 981 S.W.2d 831, 845 (Tex.
App.—Houston [14th Dist.] 1998, pet. ref’d) (permitting ninety minute detention
because officers did not continue to hold appellant after all legitimate
components of the investigative detention had been completed). 

Trooper Kibble’s withholding of appellant’s license
may have made it difficult, if not impossible, for appellant to leave. 
However, we have determined appellant’s consent was requested within a legal
detention period.  Unlike other cases, where the court found the defendant’s
consent was not an “independent act of free will” when officers retained a
necessary belonging for travel purposes, the request for consent in the instant
case did not occur during an illegal detention.  Cf. Dortch, 199 F.3d at
201–02 (holding defendant’s consent was not an “independent act of free will”
when officers retained his alien registration card during an illegal detention)
(emphasis added); Royer, 460 U.S. at 501 (determining police “seized”
defendant by retaining his plane ticket and licenses, but had defendant
“voluntarily consented to the search of his luggage while he was justifiably
being detained on reasonable suspicion, the products of the search would
be admissible against him”) (emphasis added).  Considering the totality
of the circumstances, we hold the record supports the trial court’s conclusion
that appellant’s consent was voluntary.

Conclusion

Viewing the evidence in the light most favorable to
the trial court’s ruling, the record supports the trial court’s denial of appellant’s
motion to suppress.  The trial court did not act arbitrarily or unreasonably,
and thus, did not abuse its discretion by denying appellant’s motion to suppress.
See Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)
(“[I]t is a question of whether the court acted without reference to any
guiding rules and principles. Another way of stating the test is whether the
act was arbitrary or unreasonable.”).  We overrule appellant’s issues on appeal
and affirm the trial court’s judgment.

 

 

 

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Seymore. (Frost, J., concurring.)

Publish — Tex. R. App. P. 47.2(b).

 









[1]
The hard cover enclosed the top of the entire “bed” of the truck. 

 





[2]
Miranda v. Arizona, 348 U.S. 436, 467-68, 86 S.Ct. 1602, 1624, 16
L.Ed.2d 694 (1966).

 





[3]
During the suppression hearing, both parties referred to the disk as a “CD.” 
To make clear that the disk provided both an audio and video recording of
Trooper Kibble’s stop of appellant, we refer to the disk as the “DVD.” 





[4] Because appellant has not
provided any explanation or authority for construing the Texas Constitution as
conferring greater protection in this area of the law than the federal
constitution, we will not separately address his state constitutional
argument.  See Black v. State, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App.
2000).