**Opinion issued July 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-14-00072-CR**
**NO. 01-14-00073-CR**

———————————

**LARRY WAYNE RICHARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1233998 and 1401120**

---

**MEMORANDUM OPINION**

Appellant, Larry Wayne Richard, with an agreed punishment recommendation from the State, pleaded guilty to the offense of possession with intent to deliver a controlled substance, namely, methylone, weighing more than

four grams and less than two hundred grams.[1] In accordance with the plea agreement, the trial court assessed his punishment at confinement for seven years. The State also moved to adjudicate appellant's guilt for the offense of aggravated assault of a family member,[2] for which appellant had been previously placed on community supervision. The trial court granted the State's motion to adjudicate and assessed appellant's punishment at confinement for seven years, with the sentence to run concurrently with that for the offense of possession with intent to deliver a controlled substance. In his sole issue, appellant contends that the trial court erred in denying his motion to suppress evidence, which he made in both cases.

We affirm.

## Background

In April 2010, appellant, without an agreed punishment recommendation from the State, pleaded guilty to the offense of aggravated assault of a family member. The trial court deferred adjudication of appellant's guilt and placed him on community supervision for six years.

In October 2013, a Harris County grand jury issued a true bill of indictment, accusing appellant of the offense of possession with intent to deliver a controlled

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.103, 481.113 (Vernon Supp. 2014); appellate cause no. 01-14-00073-CR; trial court cause no. 1401120.

[2] *See* TEX. PENAL CODE ANN. § 22.02(b) (Vernon 2011); appellate cause no. 01-14-00072-CR; trial court cause no. 1233998.

substance, namely, methylone, weighing more than four grams but less than two hundred grams. The State then filed a motion to adjudicate appellant's guilt in his aggravated assault case, alleging that he had violated a term of his community supervision, namely, that he "[c]ommit no offense against the laws of this or any other State or of the United States." The State further alleged that appellant had violated the terms of his community supervision by failing to submit to random urine specimen analysis and pay certain assessed fees. Appellant then filed a motion to suppress evidence in both cases.

At the hearing on appellant's motion to suppress evidence and the State's motion to adjudicate guilt, Jacinto City Police Department ("JCPD") Officer T. Sandoval testified that on September 12, 2013, while he was on duty in his patrol car "running stationary radar," he saw appellant driving a brown Buick at fifty miles per hour in a thirty-five-mile-per-hour zone. Sandoval activated his emergency lights and siren, and he followed appellant into the parking lot of an apartment complex, where appellant stopped. As Sandoval approached appellant, he saw appellant making "furtive movements towards his leg area." After he directed appellant and his two passengers to exit the car "for officer safety," he conducted a protective frisk of each of them and searched the car "for weapons." As Sandoval was "frisking [appellant], searching him for weapons," he saw a "little clear plastic baggie," "like, a sandwich bag," "hanging out of his shoe."

Sandoval explained that, based on his experience, it is "typical" for people to place "drugs . . . inside a clear plastic bag to keep it dry." Sandoval then asked appellant to remove his shoes, and, after appellant complied, Sandoval saw that the clear plastic bag contained a "powdery substance." Appellant then "kind of moved back," and Sandoval had to restrain him. Sandoval conducted a field test of the substance in the bag, which tested positive for methamphetamine.

The trial court admitted into evidence a dash-camera videotape from the patrol car of a back-up officer who later arrived on the scene. The videotape shows that upon the back-up officer's arrival, Officer Sandoval began searching appellant's car through the door on the driver's side, and he continued his search for approximately twenty seconds. Sandoval next went over to one of appellant's passengers, lifted the passenger's pant leg out of his tennis shoe, viewed the area around his ankles, and directed him to remove his shoes. Sandoval then went to appellant, who was wearing long shorts that covered his legs and high-top tennis shoes, and who was standing with his hands on the trunk of his car. Sandoval placed a hand on appellant's back and used his foot to separate appellant's feet. When appellant attempted to back up, Sandoval restrained him against the trunk of the car.

On cross-examination, Officer Sandoval testified, in pertinent part, as follows:

4

[Defense counsel]: So, after you searched the vehicle and you don't find any weapons or any drugs, then you come out of the car and you approach the three occupants, correct?

[Sandoval]: Yes, ma'am.

[Defense counsel]: And you're searching for—you're frisking them for weapons at that point in time for officers' safety, right?

[Sandoval]: Yes, ma'am, yes, ma'am.

[Defense counsel]: So, you start searching them at their ankles, correct?

[Sandoval]: Yes, ma'am.

[Defense counsel]: Okay. Now, you never at any point on the video pat down the other two occupants at their waist or their pockets, correct?

[Sandoval]: I did before the other officer showed up . . . .

. . . .

[Sandoval]: So, the second time that you're patting them down it's not for officers' safety. You're looking for drugs, correct?

[Sandoval]: At that time—I guess you could say that, yes, ma'am, I was.

[Defense counsel]: Okay. Well, is that what happened? Is that what you were doing? Because you started at their ankles, correct?

. . . .

[Sandoval]: Okay. Yes.

5

[Defense counsel]: So you're looking for drugs at that point in time?

[Sandoval]: Possibly. He could have a pocketknife down there. You just never know. If they might have a weapon down there, you just never know.

. . . .

Well, you usually find drugs, sometimes you do find drugs down there while you're searching for weapons.

On re-direct, Sandoval testified, in pertinent part, as follows:

[State]: Was your main concern weapons?

[Sandoval]: Yes.

. . . .

[State]: Okay. I want to make sure we understand this, Officer. At this point you have already patted down these guys for weapons?

[Sandoval]: Yes, sir.

[State]: Right? Just a general pat-down?

[Sandoval]: Just a general pat-down.

[State]: Okay. At this point you didn't see anything?

[Sandoval]: No, sir, I didn't.

. . . .

6

| | |
|---|---|
| [State]: | Okay. Now, you started searching the vehicle while your partner, the second officer, was at the scene, right? |
| [State]: | Yes, sir. |

. . . .

| | |
|---|---|
| [State]: | Okay. Okay. So, at this point you've searched them once; you went up to this other guy who wasn't arrested, right? |
| [Sandoval]: | Yes, sir. |
| [State]: | And you asked to see what's on his ankles? |
| [Sandoval]: | Yes, sir. |
| [State]: | Okay. This would be the second search defense counsel's talking about? |
| [Sandoval]: | Yes. . . . |

. . . .

| | |
|---|---|
| [State]: | Okay. Now, right here at this point, you put your hand on the defendant and you moved your foot near his foot? |
| [Sandoval]: | Yes, I did. |
| [State]: | Were you patting him down right here at this point? |
| [Sandoval]: | Yes. At that point, no, I was not. I had my hand on him and I was spreading his legs, yes. |
| [State]: | Okay. At this point, is this where you saw the plastic bag hanging out of his shoe? |

[Sandoval]:          Yes.

[State]:             At that point you hadn't actually patted him down a second time?

[Sandoval]:          No, I have not.

[State]:             Okay. Now, when you saw that plastic bag hanging out of his shoe, what did you think that was?

[State]:             Possibly narcotics.

Finally, on re-cross, Sandoval explained that he waited for the backup officer to arrive before patting down appellant lower on his legs because he was alone and "you never want to search down low while you're by yourself."

R. Theodore, a chemist at the Harris County Institute of Forensic Sciences, testified that the bag that Officer Sandoval seized from appellant contained 11.947 grams of methylone. And J. Fuentes, a Harris County community supervision officer, testified that appellant had violated the terms of his community supervision by failing to submit to drug testing on July 6, 2010 and pay certain assessed fees.

The trial court denied appellant's motion to suppress, explaining:

> . . . [I]n reviewing the testimony from [Officer Sandoval], the Court is going to deny the motion to suppress based on the fact that the officer —based on the officer observing, as he was—the defendant speeding, the driver of the vehicle that was speeding, 50 in a 35-mile-an-hour zone and that he observed the driver, as he was attempting to pull the car over, making furtive movements towards—particularly, I wrote down in my notes, toward his leg area, and that based on that, after stopping the car and being a one-man unit, got the three occupants out, that at the time—I just don't think the search of the car is an issue

8

at all because obviously no drugs were found and it really didn't lead to anything. But I do find that once he observed the plastic bag and based on his testimony that he knew that drugs could be held in plastic bags and that he had seen the defendant reaching towards the area of his ankle, that he had probable cause to believe that that plastic bag had some sort of contraband in it. Based on that, the Court is going to deny the motion to suppress.

It then adjudicated appellant's guilt of the offense of aggravated assault of a family member, noting:

> And based on . . . that, the Court then finds the allegation of the defendant possessed a controlled substance, on September 12th of 2013, weighing more than 4 grams and less than 200 grams by aggregate weight, including any adulterants and dilutants, to be true.

> Realistically I agree with the defense that we dealt with the other two issues previously as far as the failing to leave a UA and we've been dealing with the fee issues for quite some time, along with the other issues in the original—and I don't mean the original motion that was filed at this time but the previous motion to file.

> And based on finding those true, . . . [t]he Court having heard the evidence presented in the motion to adjudicate and finding the allegation you possessed a controlled substance, 4 to 200 grams methylone, to be true, the Court finds you guilty . . . .

After the trial court denied appellant's motion to suppress evidence and adjudicated his guilt for the offense of aggravated assault of a family member, appellant then pleaded guilty to the offense of possession with intent to deliver a controlled substance. The trial court subsequently made and filed findings of fact and conclusions of law.

9

## Standard of Review

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). "We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo." *Id*. We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and we review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review the trial court's legal ruling de novo unless its explicit findings that are supported by the record are also dispositive of the legal ruling. *Id.* We

will sustain the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

## Motion to Suppress Evidence

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress the methylone seized from his shoe because, under the United States and Texas Constitutions, the officer did not have "reasonable suspicion to search [him] a second time" and "was not in a position to trigger the 'plain view' exception to a search without a warrant." *See* U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see also Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968); *Texas v. Brown*, 460 U.S. 730, 741–42, 103 S. Ct. 1535, 1543 (1983).[3]

"A 'stop' and 'frisk' by law enforcement personnel amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing *Terry*, 392 U.S. at 16, 88 S. Ct. at 1877). Under an exception to the Fourth Amendment's warrant requirement, however, an officer may generally be justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly[]criminal behavior." *Id.* (citing *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997) ("Texas

---

[3] Because appellant does not provide argument or authority that the Texas Constitution is more comprehensive than its federal counterpart, we will limit our analysis to the Fourth Amendment's protections. *See Carmouche v. State*, 10 S.W.3d 323, 326 (Tex. Crim. App. 2000).

11

courts require reasonable suspicion before a seizure of the person or property can occur.")).

To determine the reasonableness of an investigative detention, we consider whether the officer's action was (1) justified at its inception and (2) reasonably related in scope to the circumstances that justified the interference. *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1879; *Davis*, 947 S.W.2d at 242. Under the first prong, an officer is generally justified in briefly detaining an individual on less than probable cause for the purpose of investigating "possibly [] criminal behavior," where the officer has "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880; *Carmouche*, 10 S.W.3d at 328. Reasonable suspicion must be based on more than a non-specific suspicion or mere "hunch" of criminal activity. *Terry*, 392 U.S. at 22, 88 S. Ct. at 1880. The officer must have had an objective basis for the stop; the officer's subjective intent is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). We look only to the facts known to the officer at the inception of the stop; an initially unlawful stop is not validated by a subsequent discovery of criminal activity. *See Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415 (1963).

Under the second prong, an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis*, 947

12

S.W.2d at 245. The reasonableness of the detention depends on whether law enforcement officers diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. *Id.* For instance, in a routine traffic stop, a police officer may order the driver and occupants out of the car without violating the Fourth Amendment. *O'Hara v. State*, 27 S.W.3d 548, 553 (Tex. Crim. App. 2000); *Champenois v. State*, 874 S.W.2d 254, 257 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109–111, 98 S. Ct. 330, 332, 333 (1977)). And an officer may request identification and insurance information from the detainee and conduct a computer verification. *Kothe v. State*, 152 S.W.3d 54, 63–64 (Tex. Crim. App. 2004); *see Davis*, 947 S.W.2d at 245 n.6. The investigation is not complete until such check is completed and the officer confirms that the person has no outstanding warrants. *Kothe*, 152 S.W.3d at 63–64. Once the purpose of the initial stop has been effectuated, however, "the stop may not be used as a 'fishing expedition for unrelated criminal activity.'" *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsberg, J., concurring)).

Further, a law enforcement officer who has lawfully detained a person for investigation may conduct a protective search of the detainee's outer clothing for weapons, even in the absence of probable cause, if the officer reasonably believes that the suspect is armed and dangerous. *See Terry*, 392 U.S. at 27, 88 S. Ct. at

13

1883; *Davis*, 829 S.W.2d at 220. However, "'[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence.'" *Carmouche*, 10 S.W.3d at 329 (quoting *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). A pat-down search is not justified on the basis that an officer has a "reasonable suspicion to believe that [a detainee is] involved in criminal activity." *Id.* (distinguishing legal standard justifying initial detention from legal authority to conduct "frisk"). "[T]he 'exigencies' [that] permit the additional search are generated strictly by a concern for the safety of the officers." *Id.* (citing *Terry*, 392 U.S. at 25–26, 88 S. Ct. at 1882). And the "additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.* (citing *Terry*, 392 U.S. at 26–27, 88 S. Ct. at 1882–83; *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1991)).

Officer Sandoval testified that he initially detained appellant because he saw him exceeding the posted speed limit. *See* TEX. TRANSP. CODE ANN. § 545.351 (Vernon 2011).[4] Sandoval, at that point, was afforded enough time to effectuate the purpose of the stop. *See Davis*, 947 S.W.2d at 245. As Sandoval approached

---

[4] A peace officer may arrest without a warrant a person found committing a traffic violation, with exceptions including speeding. TEX. TRANSP. CODE ANN. §§ 543.001, .004(a)(1) (Vernon 2011) (providing officer shall issue written notice rather than arrest).

appellant's car, however, he saw appellant making "a lot of furtive movements . . . towards the floor area and towards his leg area." Although the stop took place during the daytime, Sandoval noted that there was known "drug trafficking" in the area. And he asked appellant and his two passengers to exit the car. *See O'Hara*, 27 S.W.3d at 553 (noting, in routine traffic stop, officer may order driver and occupants out of car); *Champenois*, 874 S.W.2d at 257. Sandoval then performed a protective search of their waists "for weapons." *See Terry*, 392 U.S. at 27, 88 S. Ct. at 1883; *Davis*, 829 S.W.2d at 220. Furtive movement during a police stop is a factor that can give rise to reasonable suspicion justifying a continued investigatory detention. *See Kelly v. State*, 331 S.W.3d 541, 549–50 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *LeBlanc v. State*, 138 S.W.3d 603, 608 & n.5 (Tex. App.—Houston [14th Dist.] 2004, no pet.). And Sandoval explained that he waited for a back-up officer to arrive before performing a pat-down on the lower legs of the detainees because he was alone with them and "you never want to search down low when you're by yourself." The initial pat-down is not on the videotape in evidence, which was produced from the patrol car of the back-up officer, who arrived later. Sandoval did not explain whether, at that point, he had obtained appellant's license information, checked the information against his computer, or written a citation. *See Kothe*, 152 S.W.3d at 63–64.

15

The videotape does show that once the second officer arrived, Officer Sandoval searched appellant's car through the door of the driver's side for approximately twenty seconds. He then walked over to one of the passengers, lifted the passenger's pant leg out of his tennis shoe, viewed the area around his ankles, and directed him to remove his shoes. Sandoval then went to appellant, who was wearing long shorts, that draped over his ankles and covered his legs, and high-top tennis shoes, and who was standing with his hands on the trunk of his car. Sandoval placed a hand on appellant's back and used his foot to separate appellant's feet. Sandoval testified, and the video supports, that although he had intended to pat down appellant on his lower legs, he had not yet done so when he saw, partially hanging out of appellant's shoe, a clear, plastic bag, which he suspected, based on his experience and training, contained narcotics. When appellant began to back up, Sandoval restrained him against the trunk. He then directed appellant to remove his shoes and saw that the bag contained a white, powdery substance.

The State asserts that Officer Sandoval's search of appellant's ankle area was justified based on his earlier "furtive movements" and Sandoval was not required to terminate his protective search just because his earlier search of appellant's waist did not yield a weapon. It further asserts that Sandoval could

16

resume his pat-down until he "satisfie[d] himself that [appellant] ha[d] no weapons." *See Lippert v. State*, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984).

The scope of a protective "*Terry* frisk" is a narrow one. When a protective search is warranted, the search must be carefully limited to that which is necessary to discover weapons that could reasonably harm the police officers or others. *Terry*, 392 U.S. at 25–26, 88 S. Ct. 1882. Generally, "once [a] pat down and search of [a defendant's] person produce[s] neither drugs nor weapons, the limit of the investigatory detention [is] reached, and further detention" of a defendant is "impermissible." *Autry v. State*, 21 S.W.3d 590, 592 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The safety justification for a continued search disappears once an officer knows or concludes that the relevant portion of clothing "contain[s] no weapon." *Clark v. State*, 444 S.W.3d 671, 676 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd).

In *Terry*, the United States Supreme Court also noted, however, that "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous . . . , it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." 392 U.S. at 24, 88 S. Ct. at 1881. The Texas Court of Criminal Appeals has commented that "[i]f in the course of a pat-

17

down frisk the officer satisfies himself that the suspect has no weapons, the officer has no valid reason to further invade the suspect's right to be free of police intrusion absent probable cause to arrest." *Lippert*, 664 S.W.2d at 721. Notably, one court has interpreted this to mean that "[t]he converse is also true; that is, if the officer has not satisfied his reasonable suspicion that the suspect is armed, then he has a right to make a more intrusive search to ensure that no weapon is accessible." *McAllister v. State*, 34 S.W.3d 346, 353 (Tex. App.—Texarkana 2000, pet. ref'd).

In *Spight v. State*, this Court recognized that, under some circumstances, a second search for weapons is permissible. 76 S.W.3d 761, 770 (Tex. App.—Houston [1st Dist.] 2002, no pet.). In *Spight*, a state trooper conducted a traffic stop of a defendant for speeding. *Id.* at 764. The trooper noted that it was late in the evening, the defendant seemed nervous, and he had been previously arrested on a weapons charge. *Id.* The trooper conducted a brief pat-down of the defendant for weapons and found a knife in his pocket. *Id.* A consensual search of the defendant's car yielded a large sum of money and, "[b]ased on [the defendant's] behavior," the trooper had a "heightened concern for his personal safety"; he, then, conducted a more thorough pat-down search of the defendant. *Id.* at 765, 771. We held that the subsequent pat-down search was not unreasonable under the United States and Texas constitutions. *Id.* at 771.

Here, Officer Sandoval explained after he had seen appellant making "a lot of furtive movement . . . towards his leg area," he did not initially complete a pat-down search of appellant's lower body because it was dangerous for him to do so while he was alone with three detainees. Thus, he decided that it was safer for him to wait for a back-up officer to arrive. And, after the back-up officer arrived, Sandoval began to resume his pat-down. However, Sandoval testified, and the videotape shows, that he had not actually patted-down appellant's legs before he saw the baggie hanging out of appellant's shoe. Rather, in order to facilitate a search, Sandoval merely used his foot to separate appellant's feet.

Appellant does not assert that Officer Sandoval had previously patted-down his legs. And this case does not present a situation in which an officer has conducted an exceedingly intrusive search. *See Clark*, 444 S.W.3d at 676 (noting safety justification for continued search disappears when officer "already knew" or "ha[d] concluded" that the relevant portion of clothing "contained no weapon"); *see also Davis v. State*, 829 S.W.2d 218, 221 (Tex. Crim. App. 1992) (holding officer not justified in opening matchbox under guise of searching for weapons).

Appellant notes that Officer Sandoval testified that he was not "worried about" appellant. However, "there is no requirement that a police officer feel personally threatened." *Glazner v. State*, 175 S.W.3d 262, 265 (Tex. Crim. App. 2005). And Sandoval did testify that he waited to finish his pat-down until after

19

the back-up officer arrived because it would have been dangerous for him to proceed alone.

Further, although Officer Sandoval testified that he was also looking for "narcotics," his subjective intent is irrelevant to our analysis. *See Garcia*, 43 S.W.3d at 530. That he may have had another subjective motive for searching appellant does not make his objectively reasonable search unlawful. *See State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005) (citing *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996); *Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim. App. 1995)). Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *O'Hara*, 27 S.W.3d at 551.

Accordingly, we hold that the record supports the trial court's reasonable conclusion that Officer Sandoval's search did not exceed the scope of that which was necessary to determine whether appellant was armed. *See Terry*, 392 U.S. at 24, 88 S. Ct. at 1881.

Appellant next argues that Officer Sandoval did not properly seize the methylone from his shoe because he "was not in a position to trigger the 'plain view' exception to a search without a warrant." If, while conducting a legitimate *Terry* search, an officer discovers contraband other than a weapon, "he clearly

20

cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *See Michigan v. Long*, 463 U.S. 1032, 1050, 103 S. Ct. 3469, 3481 (1983). A seizure of an object is lawful under the plain view exception if: (1) the law enforcement official is lawfully where the object can be "plainly viewed," (2) the "incriminating character" of the object in plain view is immediately apparent to the official, and (3) the official may lawfully "access the object." *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). A law enforcement officer need not have actual knowledge that an observed item is contraband in assessing whether it constitutes evidence of criminal activity, but he must have probable cause to connect the item with criminal activity. *Texas v. Brown*, 460 U.S. 730, 741–42, 103 S. Ct. 1535, 1543 (1983); *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991). The officer may use his training and experience in determining whether an item seen in plain view constitutes contraband. *Brown*, 460 U.S. at 746, 103 S. Ct. at 1545; *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

Here, while conducting a valid protective search for weapons, Officer Sandoval saw a "baggie," in plain view, hanging out of appellant's shoe. Thus, Sandoval was lawfully where the baggie could be "plainly viewed," and he could lawfully "access the object." *See Keehn*, 279 S.W.3d at 334. Sandoval testified that he stopped appellant in an area known for "drug trafficking," and, in his

21

experience, it is "typical" for people to store narcotics in plastic bags to keep them dry. He further noted that "[a] lot of times they do hide narcotics inside their shoes." Sandoval did not have to know that the baggie contained contraband before seizing it; his reasonable belief that it contained contraband was sufficient. *Brown*, 460 U.S. at 740–42, 103 S. Ct. at 1542–43; *Joseph*, 807 S.W.2d at 308. Sandoval's experience with narcotics, along with his testimony that he saw the baggie during the traffic stop, supports the trial court's finding that Sandoval saw the bag in plain view and had probable cause to believe that the bag contained narcotics. *See Laws v. State*, No. 01-09-00431-CR, 2010 WL 2133925, at *3 (Tex. App.—Houston [1st Dist.] May 27, 2010, no pet.) (mem. op., not designated for publication); *see also Nichols*, 886 S.W.2d at 326.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgments of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).