**Opinion issued October 17, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00623-CR

———————————

**ANH TRAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1553478**

---

## MEMORANDUM OPINION

After the trial court denied his motion to suppress, appellant Anh Tran pleaded guilty to the offense of possession of a controlled substance (methamphetamine) and received deferred adjudication community supervision for six years. The trial court certified Tran's right to appeal the suppression ruling.

Asserting two issues, Tran contends that the trial court abused its discretion in finding that Tran consented to the search of his vehicle and that the traffic stop was not unlawfully prolonged. We affirm the trial court's ruling.

**Background**

A little before midnight on the evening of May 30, 2017, Houston Police Officer T. Salina stopped a car after observing it make a wide right turn into the middle lane of a street. Within a minute of initiating the traffic stop, Salina made contact with Anh Tran, the car's driver and only occupant, at his driver's side window. Salina's body camera captured his interaction with Tran.[1] Tran and Salina greeted each other, and Tran offered his liability insurance information and driver's license to Salina. Salina did not mention to Tran why he had been stopped, and Tran did not ask why he had been stopped.[2]

Upon being questioned, Tran denied having any weapons or "anything illegal" in the car and appellant acknowledged that he had been arrested before for "controlled substance." Salina told Tran that his insurance had just expired but told him that it was "not a real big deal."

Salina admitted that "[t]here was nothing that indicated to [him] that there was any other criminal activity other than this traffic offense." Salina did not smell

---

[1]     Tran's motion to supplement the record with the court reporter's transcription of the video is granted.

[2]     Tran has not contested the stop's legality.

2

the odor of marijuana or any other drug coming from inside the vehicle, nor did he smell alcohol on Tran, who did not appear to be intoxicated to Salina.

Salina returned to his patrol car and did a computer check of Tran's driver's license, criminal history, and warrant status. He learned that Tran had three or four prior arrests but no open warrants. Salina returned to Tran's car and asked him where he was coming from. Tran stated that he was coming from a nearby game room where he had been "trying to get some money." Salina testified that, based on his training and experience, he knew that all of the game rooms in that area of the city were known for narcotics activity. Salina said that this raised his suspicions.

Salina asked Tran again whether he had any weapons or anything illegal in the car, and he said that he did not. Next—and less than four minutes after initiating the traffic stop—Salina asked Tran, "Would you mind if I check it out real quick just to make sure? Is that cool?" Salina admitted that, after doing the computer check on Tran, his investigation of Tran's traffic violation was complete and that, at that point, he wanted to search Tran's car.

Tran did not verbally respond to Salina but immediately removed his seatbelt and got out of the car. Salina testified that he understood Tran's actions to be his implied consent to search the car. Although Salina wrote in his offense

3

report that Tran had provided verbal consent, he testified that Tran's consent was, in fact, non-verbal and that his report was inaccurate.

Immediately after Tran got out of the car, Salina asked Tran if he minded if he searched him for weapons. Tran gave an inaudible response[3] and voluntarily raised his hands above his head. He then complied with Salina's request that he turn around and place his hands on the top of the car.

While Salina and his partner searched his car, Tran sat on the curb near two other officers. After finding a bag containing methamphetamine concealed in the driver's door, Salina arrested Tran.

## Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Id.* at 190. We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*,

---

[3] The court reporter transcribed Tran's response as, "No, sir."

4

382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review de novo mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

When the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Lerma*, 543 S.W.3d at 190; *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014).

**Analysis**

After the evidentiary hearing on Tran's motion to suppress, the trial court made findings of fact and conclusions of law. Among the findings were that Tran "never communicated in any way that he did not want to allow Officer Salina to search his vehicle" and that, "based on the credible testimony of Officer Salina and its own viewing of the video from the officer's body camera, . . . the defendant's actions were a clear indication that he consented to the search of his vehicle."

The trial court concluded that Tran "gave nonverbal consent to search his vehicle" and that the "drugs found during the search of the defendant's vehicle were lawfully obtained pursuant to the defendant's valid consent to search."

**Consent**

Tran's first issue challenges the trial court's ruling that he consented to the search of his vehicle. He primarily contends that he did not provide positive and unequivocal consent, that he "merely acquiesced to the demand of law enforcement," and that any non-verbal consent was the result of duress.

> Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." One of those exceptions is a search conducted with the person's voluntary consent. The validity of a consent to search is a question of fact to be determined from all the circumstances. A person's consent to search can be communicated to law enforcement in a variety of ways, including by words, action, or circumstantial evidence showing implied consent. "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." The voluntariness of a person's consent is also a question of fact that is determined by analyzing all of the circumstances of a particular situation. The trial judge must conduct a careful sifting and balancing of the unique facts and circumstances of each case in deciding whether a particular consent search was voluntary or coerced.

*Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011).

The State must prove the voluntariness of a consent to search by clear and convincing evidence. *Id.* at 459. Consent is not voluntary if it is the product of duress or coercion, either actual or implied. *Gutierrez v. State*, 221 S.W.3d 680,

686 (Tex. Crim. App. 2007). Consent is not established by showing no more than acquiescence to a lawful authority. *Orosco v. State*, 394 S.W.3d 65, 70 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

In determining voluntariness, courts review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person, without regard for the subjective thoughts or intents of either the officer or the citizen. *Meekins*, 340 S.W.3d at 459. "By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily." *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Courts have considered several factors in determining whether consent was voluntary, including: the youth, education, and intelligence of the accused; the constitutional advice given to him; the length of the detention; the repetitiveness of the questioning; and the use of physical punishment. *Id.*; *cf. State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) ("At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'"). "Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless is it clearly erroneous." *Meekins*, 340 S.W.3d at 460.

Tran asserts that he did not give non-verbal consent; instead, he contends that he acquiesced to Salina's request to search is car. Tran argues that Salina's persistent questioning (three times) of whether Tran had any weapons or anything illegal in his car, followed by his request to search the car, communicated to Tran that he had better allow the search. He further contends that his lack of verbal consent shows his acquiescence and that Salina did not tell him that he could refuse the request.

Based on the totality of the circumstances, the trial court did not err or abuse its discretion in determining that Tran's consent was voluntary, positive, and unequivocal. Salina and Tran were cordial and polite with each other throughout their communications before Salina's request to search the car. The traffic stop was brief, and Salina requested consent to search just over three minutes into the stop. Salina did not make any threats, show of force, or other coercive tactics while they were communicating. While Salina asked Tran several times if he had any weapons or anything illegal, he only requested to search once, and the language of his request—"Would you mind if I check it out real quick just to make sure? Is that cool?"—was not coercive and was not a persistent and protracted show of authority. As the video reflects, Tran immediately complied with the request; he did not object or hesitate. And while Salina did not inform Tran that he could refuse consent, he had no affirmative duty to do so. *See Manzi v. State*, 56 S.W.3d

8

710, 719 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002); *see also Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (stating that officer's failure to inform suspect of right to refuse consent does not automatically render consent involuntary).

We overrule issue one.

**Length of Detention**

In his second issue, Tran contends that the search was unlawful because the initial detention for the traffic violation was unreasonably prolonged. He also argues that after completing the inquiries for the traffic stop, Salina did not develop reasonable suspicion to believe that Tran was engaged in other criminal activity and to permissibly extend the duration of the detention.

> In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred. A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop. During a traffic stop the officer may request certain information from a driver, such as the driver's license, vehicle registration, and proof of insurance, and run a computer check on that information. An officer is also permitted to ask drivers and passengers about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop.
>
> There is no *per se* rule that an officer must immediately conduct a computer check on the driver's information before questioning the occupants of the vehicle. Once the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen, the traffic stop

investigation is fully resolved. However, if an officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity[,] the officer may continue questioning the individual regardless of whether the official tasks of a traffic stop have come to an end.

*Lerma*, 543 S.W.3d at 190–91; *see Rodriguez v. United States*, 135 S. Ct. 1609, 1614–15 (2015). A seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. *Rodriguez*, 135 S. Ct. at 1612; *Lerma*, 543 S.W.3d at 193 ("traffic stops may last no longer than necessary to effectuate the purpose of the stop").

The evidence reflects that Salina had not completed all the tasks associated with the traffic violation and that he did not unreasonably prolong the stop before requesting Tran's consent to search the car. Salina testified that he did not "do anything in furtherance of investigating the traffic offense after [he] ran [Tran's] driver's license" and that he had finished the traffic investigation "[f]or the offense." Tran contends that "Salina made an independent decision not to write a warning citation or traffic citation," but the record does not reflect that Salina made any such decision. It merely reflects that he had not begun writing a ticket or a warning before requesting Tran's consent to search the car. Therefore, although the officer had completed his investigation of the traffic violation, he had not

completed all of the tasks associated with the traffic stop, including "the mission of issuing a ticket for the violation." *Rodriguez*, 135 S. Ct. at 1612.

"If, during a valid traffic stop and detention, the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd) (citing *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)). During the traffic stop, Salina learned facts sufficient to establish reasonable suspicion to believe that Tran had committed another violation of the Transportation Code (lack of proof of financial responsibility) and that he was involved in narcotics activity. Therefore, Salina had reasonable suspicion to extend the detention to investigate this other Transportation Code violation, and he also had reasonable suspicion to continue the detention briefly for the purpose of asking the appellant for consent to search the vehicle for contraband.

Salina stopped Tran at approximately 11:45 P.M. During his brief investigation, Salina learned that Tran had just left a nearby game room, which Salina knew from his training and experience to be linked to narcotics activity. *See Foster v. State*, 326 S.W.3d 609, 613 n.10 (Tex. Crim. App. 2010) ("Time and location are relevant and appropriate considerations when doing a totality of the circumstances review to determine whether or not reasonable suspicion exists."). Salina also learned that Tran had several prior arrests, including at least one for

11

"controlled substance." *See Hamal v. State*, 390 S.W.3d 302, 308 (Tex. Crim. App. 2012) (holding that although suspect's criminal history alone cannot support reasonable suspicion, it is factor that may be considered). Therefore, Salina had reasonable suspicion to continue the detention to question Tran and request his consent to search the car. *See Lerma*, 543 S.W.3d at 191 ("[I]f an officer develops reasonable suspicion that the driver . . . is involved in criminal activity[,] the officer may continue questioning the individual regardless of whether the official tasks of a traffic stop have come to an end.").

The body-cam video reflects that Salina acted diligently in his investigation: Salina requested and received Tran's consent to search just over three minutes after he initiated the traffic stop. This was not an unreasonable amount of time to detain Tran to investigate the traffic infractions and to request consent to search. *See Lerma*, 543 S.W.3d at 195 (concluding that five minutes between initial traffic stop and moment when officer discovered that suspect had provided false name was not unreasonable amount of time to investigate); *see also Fernandez-Madrid v. State*, No. 03-15-00796- CR, 2017 WL 875302, at *6 (Tex. App.—Austin Mar. 1, 2017, no pet.) (mem. op., not designated for publication) (concluding that suspect's detention was not unconstitutionally prolonged when officer discovered facts during initial traffic stop that gave him reasonable suspicion to continue detention by asking suspect whether there was contraband in his truck, suspect consented to

search of his truck "about seven or eight minutes" after officer initiated traffic stop, and suspect defendant consented to each phase of investigation). Because the traffic stop did not extend beyond the time reasonably required to complete the mission of issuing a ticket for the observed traffic violation and to investigate other criminal activity based on reasonable suspicion to detain Tran, the traffic stop was not unreasonably prolonged. *See Rodriguez*, 135 S. Ct. at 1612; *Lerma*, 543 S.W.3d at 190.

Furthermore, even if the traffic stop were complete when Salina requested Tran's consent, Salina did not unlawfully prolong the stop by doing so. *Leach v. State*, 35 S.W.3d 232, 235–36 (Tex. App.—Austin 2000, no pet.) (holding that police officers may request consent to search automobile after purpose of traffic stop has been accomplished so long as it is reasonable under circumstances and police have not conveyed message that compliance with their requests is required); *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("An officer may request consent to search a vehicle after a traffic stop but may not detain the occupants or vehicle further if such consent is refused unless reasonable suspicion of some criminal activity exists."); *see also Spight v. State*, 76 S.W.3d 761, 768 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (refusing to hold that it is unreasonable per se for officer to request consent to search after completion of traffic stop).

Because the trial court did not err or abuse its discretion, we overrule Tran's second issue.

## Conclusion

We affirm the trial court's order denying Tran's motion to suppress.


Richard Hightower
Justice

Panel consists of Justices Kelly, Hightower, and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).